NICHOLAS M. HOMES

*v.*

MONONGAHELA POWER COMPANY

(No. 10378)

Submitted January 22, 1952. Decided February 19, 1952.

*Ezra E. Hamstead, Ernest R. Bell,* for plaintiff in error.

*Troy Conner, Jr., Kermit R. Mason,* for defendant in error.

RILEY, PRESIDENT:

Nicholas M. Homes instituted this action of trespass on the case in the Circuit Court of Monongalia County against the Monongahela Power Company, a corporation, to recover damages for the loss of turkeys alleged to have been brought about by three separate interruptions in the flow of electric current furnished by the defendant to plaintiff's farm, and by reason of defendant's alleged failure to restore the interrupted service within a reasonable time. The amended declaration upon which this trial was had contains three counts, each count being based on a separate interruption of service, on May 30, 1948, August 4, 1948, and November 14, 1948, respectively. The circuit court having overruled defendant's demurrer to the amended declaration, defendant interposed a plea of "not guilty". On the issues raised thereby the case was tried.

During the course of the trial the evidence as to the dates of the several interruptions of electric service alleged in the first and second counts not corresponding with the dates alleged therein, the circuit court granted leave to the plaintiff to amend. In order to avoid a possible continuance plaintiff elected to proceed on the second and third counts, the date of the interruption in the second count having theretofore been amended to read "August 5, 1948," instead of August 4th.

This writ of error is prosecuted to a judgment in plaintiff's favor in the amount of fifteen hundred dollars, entered on a jury verdict.

Both the second count, as amended, and the third count alleged, among other things, that defendant, a public service corporation, was engaged in the business of supplying electric power to the public; that it had contracted to and had been supplying electric power and lights to plaintiff; and that it was under the duty to supply electric power necessary for the operation of plaintiff's business of raising turkeys.

These counts allege that for a long time plaintiff had been engaged in the business of raising turkeys for commercial purposes; that in connection therewith plaintiff contracted with the defendant corporation for the furnishing of electric power for the purpose of operating brooders and lights in and about plaintiff's plant; and that defendant was familiar with the type of plaintiff's business and knew that paintiff depended upon the defendant for the necessary electric power to operate said business. In both counts it is further alleged that it was the duty of defendant to use reasonable care in inspecting and maintaining its electric equipment, consisting of wires, poles, meter boxes, and other items of equipment, and to restore electric service within a reasonable time after defendant had notice of the failure thereof.

Both the second count, as amended, and the third count allege, respectively, the loss of seventy-five and eighty-five turkeys, by reason of the fact that they "became chilled" when the electric power was discontinued, respectively, on August 5 and November 14, 1948.

The second count charges that the defendant "negligently allowed its said equipment * * * to become out of repair, and in a bad and dangerous condition, to-wit, particularly, negligently allowed one of its utility poles, upon which its electric wires were strung, to be maintained in such condition, in that it was not properly fastened in the ground, and that the said pole fell on the

ground", causing the electric current serving plaintiff's plant to be interrupted; and, further, that after having been notified of the failure of the electric service the defendant negligently and carelessly failed to restore the same within a reasonable time; and that the failure of the electric power on that occasion continued for five hours.

The third count alleges that the defendant carelessly and negligently allowed its electrical equipment, through which it supplied electric current and power to plaintiff's plant "to become out of repair, and in a bad and dangerous condition, to-wit, in that the said defendant installed a meter box at the plaintiff's place of business for the purpose of transmitting electricity to the plaintiff's place of business, that was not sufficient size to transmit sufficient current * * *, and that because of the inadequacy of the said meter box, and because of the fact that the same was not properly wired and in good mechanical condition, the same caught fire and burned", on November 14, 1948; and that thereafter the defendant, having notice of the alleged discontinuance of electric current and power, "negligently failed to restore" the same to plaintiff's plant within a reasonable time.

Plaintiff had been in the business of raising and selling turkeys for a period of twelve years, and during that time had been receiving electric power from the defendant, Monongahela Power Company. Plaintiff purchased day-old turkeys from time to time. These baby turkeys were kept under brooders for approximately seven weeks, and after leaving the brooders the turkeys had large lights over them day and night. This, according to the plaintiff, "helped to prevent any stampeding whatever." At the time that the losses are alleged to have occurred, he had approximately twenty-five hundred turkeys.

Plaintiff testified that in April, 1948, he requested one Sommer, an employee of defendant, to come to his plant and examine the meter box which plaintiff says defendant had installed therein in 1946. On that occasion he advised Sommer that the meter box was a five-ampere

box; that at that time he was advised that the meter box was entirely inadequate; and that plaintiff then requested Sommer to install a fifteen-ampere box and Sommer told him he would send an engineer out with one in a few days. Thereafter two men came from the defendant corporation, and advised plaintiff that it was not necessary to install a larger meter box. On November 14, 1948, the day upon which the loss in the third count of the declaration is alleged to have occurred, plaintiff testified that the meter box caught fire, and the power was off for a period of three hours. It was during this three-hour period that plaintiff claims he suffered the loss of eighty-five turkeys.

Plaintiff testified that on August 5, 1948, at one o'clock a. m., the power went off, and, though the company was notified promptly, the current was not restored until six-thirty on that morning. Evidence of a severe electrical storm on that day was introduced. This interruption of electric power, plaintiff testified, resulted in the loss of seventy-five turkeys.

Plaintiff's brother and sister, who live on the farm, testified to the effect that the meter box caught fire on November 14, 1948, and that the electric power was off for three hours.

Plaintiff's testimony throughout his direct and cross examination was to the effect that the turkeys were killed, seventy-five on August 5, 1948, and eighty-five on November 14, 1948, as the result of stampeding, which began in both instances when the lights went off. In his direct examination he testified that the turkeys were used to having these large lights over them, and that as soon as the power went off leaving them in complete darkness, they "began to knocking against each other, and as a result of that they stampeded for that period of time;" that a turkey is a very nervous bird and has "to have the same thing all the time. * * * As soon as these birds feel each other touching each other, it just arouses them, and they just won't stop stampeding until you re-

store the power back again." On cross examination, in referring to August fifth, plaintiff testified: "It is an established fact that they stampeded after we called. * * * They were stampeding for three hours after the power was off, and we went right into the turkey pen."

Several of defendant's employees testified for defendant. W. E. Camp, who answered plaintiff's telephone call on August 5, 1948, testified that the current could have been off until six o'clock of that morning; but none of defendant's crew assigned to the work of restoring the electric power went back to the Homes farm to check after installing the new line fuses. W. B. Breese testified that at six-thirty in the evening of November 14, 1948, the time plaintiff complained of the burning of the "meter box", he was sent to plaintiff's farm to take care of the trouble complained of; that he arrived at the farm about twenty minutes later and found the switch in the fuse box had been pulled, thus disrupting the electric current; that he found the wires had been heating the fuse box or range panel due to a loose connection in the fuse box; and that he tightened the connection, put in a new fuse and immediately the service was resumed; that he then reported to the company's office, and further that he restored electric service in about fifty minutes, and while at plaintiff's farm no one said anything about plaintiff's turkeys. A record of the defendant company shows "Trouble in customer's fuse box." At that time plaintiff was using a sixty-ampere service entrance, consisting of a metal fuse box and a meter box with meter installed therein connected by an entrance service cable, though he had been advised to change to a one hundred-ampere service entrance.

Plaintiff's witness, Felix Elliott, Jr., testified he had examined the electric meter and equipment on plaintiff's farm; that in his opinion a five-ampere meter was not of sufficient size to serve the electrical equipment thereon; and that such meter would cause overheating and was not safe. This witness testified also that defendant had installed the meter box for the Homes plant. Ralph E.

Clear, the first witness who testified for defendant, stated that "A heavy load would probably burn the small meter up—and that when the meter burns up the power would go off."

The court, over defendant's objection and exception, gave plaintiff's instruction No. 3, the only instruction given on plaintiff's behalf. This instruction reads: "The Court instructs the jury that it is the duty of the defendant in this case, Monongahela Power Company, to use reasonable care at all times, to provide the plaintiff in this case, Nicholas M. Homes, a constant flow of electricity in sufficient quantity to supply the requirements for plaintiff's business."

Defendant's grounds of error may, for convenience, be grouped as follows: (1) The trial court erred in overruling defendant's demurrer to plaintiff's amended declaration, because the declaration improperly joined (a) an action *ex contractu* and (b) an action *ex delicto,* which are separate and distinct actions at law; (2) the trial court erred in submitting the case to the jury on the theory that there was actionable negligence on the part of the defendant, which proximately contributed to plaintiff's losses; (3) the trial court erred in failing to hold that plaintiff's evidence was fatally at variance with the allegations of his amended declaration, in that (a) the amended declaration alleges a contract, while plaintiff's proof denied a contract, (b) the amended declaration alleges that plaintiff sustained the losses because the turkeys died from chilling, when the electric current was interrupted, while plaintiff's evidence is to the effect that they died as a result of stampeding; (4) the trial court erred in giving plaintiff's instruction No. 3; and (5) the trial court erred in refusing to set aside the verdict on the ground that it was excessive. These grounds of error will be discussed *seriatim.*

Initially, defendant says that the trial court erred in overruling its demurrer to plaintiff's amended declaration. It is asserted that the amended declaration improp-

erly joined: (a) An action *ex contractu,* and (b) an action *ex delicto,* which are separate and distinct actions at law. If this position is correct, there is a misjoinder of causes of action. In this jurisdiction tort and contract cannot be united, though separate counts are employed for each action. Boyd, Koontz', Burks, Pleading and Practice, 4th Ed., Section 98; Williams' Burks Pleading and Practice, 3d Ed., Section 386; Hogg's Pleadings and Forms, 4th Ed. (1934), Section 211. An examination of the amended declaration discloses that the liability alleged is based on tort. Though defendant's duty originally arose under the contract or application in evidence, and even if plaintiff could have elected to proceed by an action of assumpsit, which we need not and do not decide, the wrongful acts alleged in the declaration being in themselves tortious, plaintiff may, as he did in this case, proceed by an action of trespass on the case. The correct rule is stated in 12 Am. Jur., Contracts, Section 459, "Where the transaction complained of had its origin in a contract which places the parties in such a relation that in attempting to perform the promised service the tort was committed, the breach of contract is not the gravamen of the action. The contract in such case is mere inducement, creating the state of things which furnishes the occasion of the tort, and in all such cases the remedy is an action ex delicto, and not an action ex contractu", citing under note 12 *Jackson* v. *Central Torpedo Co.,* 117 Okla. 245, 246 P. 426, 46 A.L.R. 338. In *Lake O'Woods Club* v. *Wilhelm,* 126 W. Va. 447, 453, 28 S. E. 2d 915, 918, this Court, speaking through Judge Fox, said: "A party may not in the same suit or action seek to recover for a tort and on a contract. He must waive either the tort or the contract, and proceed on a single theory." See generally 6 M. J., Election of Remedies, Section 6.

The rule prevailing in the Virginias is that "the demands against the same party may be joined when they are all of the same nature and the same judgment has to be given in each, notwithstanding the pleas may be different." Williams' Burks, Pleadings and Practice, 3d

Ed., Section 482; *Standard Paint Co.* v. *Vietor & Co.*, 120 Va. 595, 596, 91 S. E. 752. In the two counts upon which the case was based, plaintiff charges that on two occasions defendant negligently permitted interruptions of electric power to plaintiff's plant, and thereafter failed in each instance to restore the service promptly. The interruptions and the negligent failure to restore the service promptly are alleged to have caused the death of plaintiff's turkeys. The amended declaration alleges a common basis for the negligence charged, and asserts a claim for a single recovery against a single defendant: consequently, there is no misjoinder of causes of action and the demurrer to the amended declaration was properly overruled.

The trial court refused to give defendant's instruction No. 1, which was peremptory. This refusal brings into consideration defendant's second ground of error that the trial court erred in submitting the case to the jury on the theory that there was actionable negligence on the part of defendant, which proximately contributed to plaintiff's losses. We apply here the rule governing the direction of verdicts that on a motion to direct a verdict in a defendant's favor every reasonable and legitimate inference favorable to the plaintiff, fairly arising from the evidence considered as a whole, should be entertained by the trial court, and those facts should be assumed as true that the jury may properly find under the evidence. *Arrowood* v. *Norfolk & Western Railway Co.*, 127 W. Va. 310, 32 S. E. 2d 634; *Parsons* v. *New York Central Railway Co.*, 127 W. Va. 619, 34 S. E. 2d 334; *Reed* v. *Janutolo*, 129 W. Va. 563, 42 S. E. 2d 16; and *Frampton* v. *Consolidated Bus Lines*, 134 W. Va. 815, Pt. 1, syl., 62 S. E. 2d 126.

Common to both the second count, as amended, and the third count of the amended declaration is the allegation that after the interruption of electric service on August 5, 1948, and November 14, 1948, defendant unreasonably and negligently delayed the restoration of the service, and that as the proximate result thereof plaintiff, as alleged in the second count of the declara-

tion, as amended, lost seventy-five turkeys, and, as alleged in the third count, lost eighty-five turkeys.

As the evidence conflicts on the question whether defendant unreasonably delayed the restoration of the service, we take plaintiff's evidence bearing on that question as true under the rule in the case of *Arrowood* v. *Norfolk & Western Railway Co., supra,* and the kindred cases heretofore cited. Notwithstanding, however, that defendant may have unreasonably and negligently delayed the restoration of the electric service, plaintiff cannot recover on that basis unless there is sufficient evidence from which the jury could reasonably find that the delay was the proximate cause of plaintiff's losses. *Webb* v. *Sessler,* 135 W. Va. 341, 63 S. E. 2d 65; *Divita* v. *Atlantic Trucking Co.,* 129 W. Va. 267, 40 S. E. 2d 324; *Edwards* v. *Hobson,* 189 Va. 948, 54 S. E. 2d 857. As the evidence clearly shows that the turkeys were killed when they stampeded on the failure of the electric lights caused by the interruption of the electric current, the delay in the restoration of the electric service, whether it was unreasonable or not, could not have been the proximate cause of plaintiff's loss.

In addition to the allegations as to the alleged delay in restoration of the electric current, count two, as amended, and count three allege independent acts of negligence which proximately resulted in the alleged losses.

The second count, as amended, alleges that the defendant negligently allowed its electrical equipment to become out of repair "and in a bad and dangerous condition, to-wit, particularly, negligently allowed one of its utility poles to be maintained in such condition" that the pole fell to the ground, causing the electric current to plaintiff's farm to be discontinued. On the trial, however, no attempt was made to prove the allegation as to the utility pole, and the evidence shows that upon the replacement of the fuses at a point along defendant's transmission lines some distance from plaintiff's farm, which replacement occurred prior to the straightening of the

utility pole which was merely leaning, the electric power was immediately restored to plaintiff's plant. On the night of August 5, 1948, at the time the electric service to plaintiff's plant was disrupted, there was a severe storm, accompanied by thunder and lightning, which evidently burned the fuses, which were later replaced. The burning of the fuses was not shown to have resulted from any act of negligence on defendant's part. Electric fuses are designed to burn when the wires are charged with excessive and dangerous electric current such as is produced by lightning. There being no proof in this record of a causal connection between the negligence charged in the second count, as amended, and the interruption of the electric current, no recovery can be had under that count.

The third count of the amended declaration alleges that the interruption of electric service on November 14, 1948, was attributable to defendant's negligence in allowing its electrical equipment to become "in a bad and dangerous condition" in that the defendant "installed a meter box at the plaintiff's place of business * * * that was not sufficient size to transmit sufficient current through the same", and because of the inadequate size "of said meter box" and the further fact that it was not properly wired and in good mechanical condition, it was caused to catch fire and burn, resulting in the discontinuance of the electric current to and into plaintiff's plant.

Defendant's Exhibits Nos. 3, 4, and 5, introduced in evidence, were identified, respectively, as a metal fuse box, also known as a range panel, an entrance service cable, and a meter box, also known as a connecting panel and meter panel.

Defendant's witness, E. Ralph Clear, an electrical engineer, testified that all three such pieces of electrical apparatus constituted the "main service entrance" to plaintiff's plant. This witness testified that about the year 1946, at plaintiff's request and expense, he installed this service entrance on plaintiff's farm.

There is some confusion in plaintiff's testimony as to

the character of the equipment, due evidently to plaintiff's lack of technical knowledge, but the testimony of the witness Clear to the effect that the service entrance was wholly on plaintiff's farm is uncontradicted in this record. However, as the evidence conflicts on whether the defendant installed the main service entrance on plaintiff's farm, or whether the service entrance was installed by the witness Clear at plaintiff's request and expense, it must be said that, under the rule heretofore stated governing the direction of verdicts by a trial court, that the main service entrance was installed by the defendant on plaintiff's farm. This holding of itself, however, does not justify a submission to the jury of the question whether defendant was guilty of the negligence alleged in the third count of the declaration, which proximately caused plaintiff's loss alleged therein; for, in order to recover under the third count, plaintiff must produce sufficient evidence to establish for jury determination that the interruption of the electric service alleged in the third count was attributable to defendant's negligence.

Defendant's witness, W. B. Breese, who has been employed by the defendant corporation for over twenty-five years in the City of Morgantown, testified that after receiving the report of trouble at the Homes plant, he proceeded to the Homes farm, and found that the switches in the fuse box, or range panel, in the main service entrance had been pulled, which, of course, would serve to turn off all electric power leading into the Homes plant; that the wires had been "heating up and getting hot" in the fuse box or range panel, because of a loose connection therein; and that after tightening the connection witness replaced the fuses and thereupon the electric service was restored. This testimony stands uncontradicted in the record, and that being so this record establishes, as a matter of law, that the interruption of electric service to plaintiff's plant did not occur by reason of any inadequacy of the meter box, but from a loose connection in the fuse box, or range panel, which, in our opinion, the

defendant could not have foreseen. The allegations of the third count of plaintiff's amended declaration have not been proved in such manner as to satisfy the requirement of jury determination.

It follows that the verdict of the jury, being without sufficient evidence to support it on the question of defendant's negligence, should be set aside and a new trial awarded. *Coalmer* v. *Barrett,* 61 W. Va. 237, pt. 1, syl., 56 S. E. 385, and *Kap-Tex, Inc.* v. *Romans,* 136 W. Va. 489, pt. 1, syl., 67 S. E. 2d 847.

Defendant's third ground of error is that the trial court erred in failing to hold that plaintiff's evidence was fatally at variance with the allegations of the amended declaration, in that: (a) The amended declaration alleges a contract, while plaintiff's proof denies a contract; and (b) the allegation of the declaration alleges that plaintiff sustained the loss, because the turkeys died from chilling, when the electric current was interrupted, while plaintiff's evidence is to the effect that they died as the result of stampeding.

The first position asserted by counsel for the defendant under this third ground of error has to some extent been discussed under the first ground of error. As this declaration is grounded on tort based upon the written contract, which is fully established by the evidence, defendant's position that there is a fatal variance in that the amended declaration alleges a contract, while plaintiff's proof denies a contract, is unsound.

There is, however, a variance between plaintiff's pleading and the evidence in that the amended declaration alleges that plaintiff sustained the losses as a result of the turkeys dying from chilling, when the electric current was interrupted, and the evidence is to the effect that they died as a result of stampeding. If the amended declaration had not alleged *how* the turkeys had died, there, of course, would have been no variance between the pleadings and the proof. But a declaration should be written so that the defendant will not be misled in the

preparation of his defense. Whether this variance is material, and, therefore, fatal, we need not decide, because the case will be remanded for a new trial. In the event a new trial is had, it is incumbent upon counsel for plaintiff, if it is deemed advisable to further amend the amended declaration so its allegations will conform to the proof which counsel expect to adduce on the new trial.

As the fourth ground of error defendant asserts that the trial court erred in giving plaintiff's instruction No. 3, which reads: "The Court instructs the jury that it is the duty of the defendant in this case, Monongahela Power Company, to use reasonable care at all times to provide the plaintiff in this case, Nicholas M. Homes, a constant flow of electricity in sufficient quantity to supply the requirement for the plaintiff's business."

This instruction is abstract, and told the jury that it is defendant's duty *"to use reasonable care at all times* to provide the plaintiff * * * a constant flow of electricity * * *."* (Italics supplied). Though the instruction states a proper principle of law, it is so worded that the jury might infer that in any event, notwithstanding the interruptions of electric current occurred by causes beyond defendant's control, defendant was under the duty to provide plaintiff with a constant flow of electricity in sufficient quantity to meet the requirements of his business. For this reason plaintiff's instruction No. 3, though abstract, was apt to mislead the jury in arriving at its verdict, and the giving of the instruction constitutes reversible error. *Teter* v. *Norfolk Fire Insurance Corporation*, 74 W. Va. 461, 82 S. E. 201; *Thomas* v. *Kanawha Valley Traction Co.*, 73 W. Va. 374, 80 S. E. 476, 10 M. J., Instructions, Section 27, note 8.

And, finally, addressing ourselves to defendant's fifth ground of error, we are of opinion that the verdict in the amount of fifteen hundred dollars in plaintiff's favor should not have been set aside on the ground that it is excessive. In this jurisdiction, a verdict for damages for a wrong should not be disturbed on the ground that it is

excessive, except where it is so excessive that "it plainly appears to have resulted from mistake, partiality, passion, prejudice or lack of due consideration * * *". *Webb v. Brown & Williamson Tobacco Co.*, 121 W. Va. 115, op. 122, 2 S. E. 2d 898.

For the foregoing reasons the judgment of the Circuit Court of Monongalia County is reversed, the verdict set aside, and a new trial awarded.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*