ELISHA CARTER

*v.*

GEORGE W. WILLIS, DOING BUSINESS AS WILLIS WATER WORKS

(No. 11085)

Submitted April 20, 1960. Decided December 20, 1960. Resubmitted September 27, 1960.

*J. W. Maxwell, Fletcher W. Mann,* for plaintiff in error.

*Clay S. Crouse, David D. Ashworth,* for defendant in error.

BROWNING, PRESIDENT:

Plaintiff, Elisha Carter, instituted this action of trespass on the case in the Circuit Court of Raleigh County to recover damages of the defendant, George W. Willis, trading and doing business as Willis Water Works, in the amount of $10,000.00. The declaration alleges that defendant had obtained a certificate of convenience and necessity from the Public Service Commission to furnish water to the plaintiff and others, and, pursuant thereto, undertook to furnish water to the plaintiff in conformity with the rules and regulations of the Public Service Commission, but that, with reckless indifference and in total disregard of plaintiff's right to have and receive an adequate supply of water to satisfy his needs, defendant unlawfully, wilfully and negligently failed to render such service. The declaration further alleges that plaintiff was possessed of valuable residence property in which he resided with his wife, to whose society, assistance, companionship and services plaintiff was entitled at all times, but that, as a proximate result of the defendant's failure to perform his duties, plaintiff's wife was required to do and perform work and services in the performance of her household duties which she would not ordinarily be required to do, as a direct consequence of which his wife's health became impaired, thus depriving him of her comfort, society and services generally and requiring him to expend large sums of money for medical care. Plaintiff further alleges that, as a result of defendant's failure, he was prevented from utilizing household appliances and equipment, from raising produce and garden products, was caused to expend money for damage to household appliances, suffered physical pain and mental anguish, was caused to perform work and labor to conserve water and in obtaining water from other sources; and, that the fair market value of plaintiff's residence property has been continuously diminished over a nine year period in which defendant has failed to perform his duties. Defendant demurred to the declaration on the grounds

that: (1) The declaration fails to state a cause of action; (2) the declaration sounds in contract whereas it purports to be an action of trespass on the case; (3) defendant is alleged to be a public utility and the declaration fails to allege that plaintiff has sought relief through the processes of the Public Service Commission; and (4) the declaration alleges two separate causes of action, one, for deprivation of his wife's companionship and services and, two, for his own personal suffering and damage to his property. Defendant also filed five special pleas: No. 1, that plaintiff's claim had been assigned previous to the institution of the action; No. 2, that plaintiff's assignee had previously instituted an action on the claim against the defendant which had resulted in an involuntary non-suit; No. 3, that a proceeding was pending before the Public Service Commission at the time of the institution of this action; No. 4, that the statute of limitations bars recovery for damages accruing prior to a period of one, or at most, two years before the commencement of the action; and No. 5, res judicata. Plaintiff replied to the special pleas, to which replications defendant demurred, and interposed a plea of the general issue. The trial court overruled the demurrer to the declaration and the dumurrers to the replications to the special pleas, held that none of the special pleas constituted a defense to the action, and the case proceeded to trial.

Plaintiff testified, in substance, that: He had been a customer of the defendant for a number of years; he resided at a "high point" on defendant's water line; the water supply had never been adequate to satisfy the needs of himself and his household; the water usually went off in the morning before eight o'clock, and there would not be sufficient water to wash, cook, bathe, flush the commode, or for any other purpose, until ten or eleven o'clock at night; in order to obtain sufficient water for daytime purposes it was necessary to "catch" water during the night in pails, bathtubs or other receptacles, or to carry water from residences at lower elevations; he, when working, obtained water

near his place of work to supplement that available at his residence; he averaged one hour a day in obtaining sufficient water; a reasonable price for such extra labor in obtaining water would be $1.00 an hour; he suffered great embarrassment and humiliation when entertaining guests by reason of the lack of water; and he had made numerous complaints, all unavailing, to the defendant about the situation. Plaintiff's testimony was corroborated by several neighbors, who were familiar with plaintiff's situation, and who had experienced similar difficulties themselves. Plaintiff also introduced into evidence the Rules and Regulations of the Public Service Commission governing water companies, and two proceedings before the Public Service Commission in 1950-51 and 1957 against the defendant, for failing to furnish an adequate supply of water, the petitions on which such proceedings were based, the testimony taken thereon and the Commissioner's order in regard thereto. The defendant admitted that at certain times the water supply was inadequate, but attributed this to the wasting of water by the plaintiff and others, and introduced the testimony of three witnesses, who lived in the vicinity of the plaintiff, who stated that the water supplied by the defendant was sufficient to satisfy their needs. The defendant also introduced the testimony of an engineer, employed by the defendant in January, 1958, pursuant to an order of the Public Service Commission of March, 1957, who testified that, on January 16, 1958, at 3:30 P.M. he calculated the water pressure at plaintiff's residence to be 76 lbs. per square inch, and that the normal residence requirement is but 20 lbs. per square inch. He also testified that within 10 days after his employment, by relocating and readjusting a pressure regulator in the water line, all customers of the defendant received an adequate supply of water under adequate pressure which is not denied by the plaintiff. Defendant also offered the testimony of several other customers of the defendant, none of whom lived in the vicinity of the plaintiff, but some of whom lived at higher elevations than the plaintiff, and all of whom would have testified

that they received an adequate supply of water during the period in question, which testimony the court refused to admit.

At the conclusion of all of the evidence, the court struck the evidence of the defendant and directed a verdict for the plaintiff on the question of liability and, after retiring to its room and considering the question of damages, the jury returned a verdict in favor of the plaintiff in the amount of $3,850.00, and judgment was entered thereon, to which judgment this Court granted a writ of error and supersedeas.

Thirty-seven assignments of error are made in this Court, many of which are merely subdivisions of a general assignment.

The plaintiff's declaration states a cause of action and the trial court properly overruled the demurrer to it. A user of the services of a public corporation who has been damaged thereby is not limited by recourse to the Public Service Commission and such relief as he may there receive. Code, 24-4-7, clearly provides that, in addition to making complaint to the Commission, he may "bring suit in his own behalf for the recovery of the damages for which such public utility may be liable under this chapter in any circuit court having jurisdiction."

This Court held in *Wheeling Steel Corporation v. Public Service Commission,* 90 W. Va. 74, 110 S. E. 489, that the authority of the Public Service Commission is limited to prescribing rates and practices, to directing public corporations to comply with them and that if such corporation refuses compliance the injured party must seek damages in a court of competent jurisdiction. This decision was predicated upon the provisions of Code, 24-4-7.

As herebefore stated, the instant action is one of trespass on the case. It is so captioned and the allegations of the declaration assert a negligent breach of duty on the part of the defendant. It is true that the

duty arises out of a contract between plaintiff and defendant wherein the defendant agreed to supply the plaintiff with an adequate amount of water in return for a monetary consideration. Nevertheless, in such a situation the plaintiff may, at his option, maintain an action, *ex contractu,* for breach of contract, or an action *ex delicto,* for breach of duty, where the defendant negligently fails to comply with the terms of his contract. The plaintiff herein has elected to pursue his remedy in tort, as was his privilege, but, by such election, he is necessarily limited in the recovery of damages to the amount properly allowable in a tort action.

After both parties had submitted their evidence and rested, the trial court orally instructed the jury to find a verdict for the plaintiff, and gave this one instruction:

"The Court instructs the jury, that if you find for the plaintiff, then in arriving at the amount of damages that the plaintiff is entitled to recover, you may consider the following:

"(a) Reasonable compensation for work and labor necessarily performed by the plaintiff and his wife to obtain a necessary supply of water for use in their home covering a period of five years, or any part thereof, prior to January 22, 1958, as shown by the evidence in this case.

"(b) The mental anguish, loss of sleep, inconvenience and discomfort directly caused to the plaintiff, if any, by reason of the failure of the defendant to furnish to the plaintiff an adequate supply of water for the same period of time, as shown by the evidence in this case.

"And find for the plaintiff in such total amount as will fairly compensate him, as foresaid." It was reversible error to give that part of this instruction which is designated as Paragraph "(a)". Code, 55-2-12, as amended, at the time of the institution of this action, read: "Every personal action for which no limitation

is otherwise prescribed shall be brought (a) within two years next after the right to bring the same shall have accrued, if it be for a matter of such nature that, in case a party died, it can be brought by or against his representative; and (b) if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same, have accrued; and not after * * *." Prior to the amendment of this section in 1949, the period mentioned in Subsection (a) thereof was a five year period and that provision had remained therein since the adoption of the Code of 1868. This section has since been amended by Chapter 2, Acts of the Legislature, Regular Session, 1959. It is only by this statute and only to the extent therein provided that the common law rule that all personal actions died with the person has been abrogated. Even now in this jurisdiction no injury to the person survives where the party who received or the person who committed the injury died, with the single exception of what is commonly known as Lord Campbell's Act. Code, 55-7-5. The rule is stated in these decisions of this Court: *Byrd v. Byrd,* 122 W. Va. 115, 7 S. E. 2d 507; *Kuhn v. Brownfield,* 34 W. Va. 252, 12 S. E. 519; *Flint v. Gilpin,* 29 W. Va. 740, 3 S. E. 33; and *Curry v. Mannington,* 23 W. Va. 14. In the *Curry* case, after stating the rule that recovery of damages for injury to the person if not fatal, is barred by the statute of limitations after one year, the Court said: "These statutes have conferred upon the representative of the deceased party the right to sue or bring an action for any injury done to the personal estate of the decedent in his lifetime whereby it has become less beneficial to the representative, in the same manner as the decedent might himself have done. * * *". In the *Kuhn* case the gravamen was a non-fatal wound to the plaintiff and recovery was sought against a physician on the ground of alleged malpractice in the treatment thereof. The 4th Syllabus Point of that case is interesting: "In such action for such cause, whether *assumpsit* or case, one year is the period which is applicable under the statute of limitation."

The wrongs for which plaintiff seeks redress have been briefly paraphrased in the beginning of this opinion. There are allegations of injury to the person and injury to the property of the plaintiff. A careful reading of the evidence shows that the plaintiff did not prove some of these allegations. It is not possible to determine whether the verdict of the jury was founded upon personal injury or injury to the plaintiff's property. Under the provisions of Code, 55-2-12, as amended, the limitation for the former, which does not survive, is one year while the limitation for the other, which does survive, is two years. In the case of *Akers v. Ashland Oil & Refining Co.*, 139 W. Va. 682, 80 S. E. 2d. 884, the sole question before the Court was whether the jury was correctly instructed as to the measure of damages. The Court held the damages to be permanent in nature and affirmed the judgment of the lower court in that regard. However, near the end of the opinion, in distinguishing between permanent and temporary damages, the statement was made that, in the case of temporary damages, plaintiff could maintain an action therefor "every five years". This statement was made through inadvertence and was obviously incorrect under the provisions of Code, 55-2-12, as amended.

Inasmuch as this case must go back for a new trial we do not deem it necessary or advisable to discuss the many other assignments of error. However, it may be noted, in passing, that in *McCabe v. City of Parkersburg*, 138 W. Va. 830, 79 S. E. 2d. 87, this Court said: "There must be a relative continuity between the allegations in a declaration, the evidence and the instructions so that a jury may know, or at least be informed, of the specific theory of recovery relied upon by the plaintiff * * *."

The judgment of the Circuit Court of Raleigh County is reversed, the verdict of the jury is set aside and the case is remanded for a new trial.

*Reversed and remanded.*