NEWMAN COCHRAN, *et al.*

*v.*

APPALACHIAN POWER CO.

(No. 13788)

Decided July 11, 1978.

*W. Graham Smith, Jr., Smith & Rumora, Williamson, Charles A. Tutwiler, Tutwiler, Crockett & LaCaria* for appellant.

*Sterl F. Shinaberry, Hostler & Shinaberry* for appellees.

McGRAW, JUSTICE:

Appellee, Cochran, operator of a small coal mine in Chattaroy Hollow, Mingo County, West Virginia, on October 14, 1958, entered into a contract with Appalachian Power Company (Power Company) by which the Power Company agreed to put in poles and electric lines to his mine for the sum of $2,300.00. After making payment, he was given a receipt which provided that this $2,300.00 "is not subject to refund." According to Cochran's undisputed evidence, he began operating the mine after the power was installed and continued to operate it on an

irregular basis until 1966. In 1964, 1965 and early 1966 there was some disagreement between Cochran and the Power Company over whether or not he was in arrears in payment for his electricity, Cochran contending that he had overpaid and the Power Company contending he still owed it money. The evidence indicates that on March 3, 1966, without giving any notice, the Power Company pulled the cutouts on the lines going to the mines and cut off the electricity while certain equipment of Cochran's remained in the mines. Since the electricity was cut off, water pumps were unable to operate, and water inside the mine accumulated, covered up and damaged the equipment and material. Cochran, after learning that the electricity had been cut off, went to the Power Company representatives and attempted to get them to restore power, but the Power Company refused to do so without a deposit from Cochran. Two months later in May, 1966, Cochran received a check from the Power Company representing an overpayment by him of his prior electric service.

According to his undisputed evidence, Cochran made several trips to the Power Company to attempt to get it to restore power to the mine between March 3, 1966 and October 14, 1968. In 1968, the Power Company, without giving any notice, removed the electric poles leading to the Cochran mine and refused to replace them.

Appellee Cochran, on March 3, 1970, instituted a civil action against the Power Company in the Circuit Court of McDowell County for damages occasioned by the termination of electrical service to his mine. The complaint, alleged in full that:

(1) On or about October 14, 1958, the plaintiffs entered into a contract with the defendant whereby the defendant agreed to install a power line to and supply power for the mines operated by the plaintiffs and located on Buffalo Creek in Mingo County, West Virginia. For installing the power line, plaintiffs paid to the defendant company the sum of Twenty-three Hundred Dollars

($2300.00), and paid for power supplied to them on a monthly basis.

(2) On or about March 6, 1968, without notifying plaintiffs and in violation of the agreement entered into between the plaintiffs and the defendant, the defendant acting through its agents, servants and employees, wilfully, wantonly and negligently removed the power line which it had installed pursuant to the agreement reached on October 14, 1958, and terminated the supply of power to the mines ran by the plaintiffs. At the time such action was taken, the plaintiffs had numerous items of mining equipment inside the mines and as a consequence of the action taken by the defendant, the plaintiffs could not remove said equipment from the mines and it was severely damaged from being left for a prolonged period in the mines. Further, because the plaintiffs' equipment was in the mines, the plaintiffs were required to continue paying royalty on the lease which they had and further, as a result, the plaintiffs suffered monetary loss in not being able to operate their mines, all to the extent of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00).

WHEREFORE, plaintiffs demand judgment against the defendant for the sum of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), plus interest and their costs of action.

Plaintiffs demand a trial by jury.

At trial the only evidence presented by either party on the issue of damages was by Cochran who, after detailing his background and experience in dealing with mine equipment of the type involved, testified as to the value of each item of mining equipment that was destroyed in the mine by the discontinuation of electricity. He further testified about property taxes and minimum royalties he had to pay during the period of time his equipment remained on the leased property due to the lack of electricity. The total damages contended for at the close of Cochran's evidence was $7,474.00, which consisted of

the following: $2,300.00 for the installation of the power that was removed by the Power Company; $1,200.00 for royalties paid on the lease during the years which the mine could not be operated as a result of the electricity being terminated; $124.00 paid in property taxes pursuant to the terms of the lease; $500.00 for a 35-B Jeffrey cutting machine; $600.00 for a conveyor and motor; $500.00 for machine cable and conveyor cable; $1,600.00 for 20 tons of steel; $500.00 for two mining cars; and $150.00 for one pump. The appellant Power Company offered no evidence of any kind regarding damages.

At the close of Cochran's evidence, the Power Company asserted for the first time a plea of the statute of limitations and made a motion for a directed verdict upon that ground and upon the ground that the testimony offered in support of the damages was not legally sufficient to sustain an award. These motions were overruled at that time and then again later when they were renewed at the close of all the evidence.

Appellant Power Company now assigns as error the following:

1. The trial court erred in overruling the motion to dismiss that Power Company made at the close of the plaintiff's evidence and again at the close of all the evidence on the ground that the relief was barred by the two-year tort statute of limitations.

2. The trial court erred in allowing the plaintiff to testify over objection as to the monetary damages to his mining equipment.

3. The trial court erred in refusing to strike the sum of $2,300.00 from the *ad damnum* clause in the complaint.

4. The trial court erred in refusing to give Defendant's Instructions Nos. B and I.

5. The trial court erred in giving Plaintiff's Instructions Nos. 2 and 3.

6. The trial court erred in not granting Power Company's motion for remittitur to an amount not to exceed $1,324.00.

In their first assignment of error the Power Company argues that this action, sounding in tort, is barred by the two-year tort statute of limitations, *W.Va. Code*, 55-5-2, and that the trial court erred in failing to grant a motion to dismiss that the Power Company made at the close of Cochran's case and renewed at the close of all evidence. Power Company raised the affirmative defense of statute of limitations for the first time by this motion to dismiss. It does not appear in any pleading it filed. Power Company contends that this civil action was filed on March 4, 1970, and that power was actually terminated on March 3, 1966. In arguing that the complaint alleges a tort, it emphasizes the wording of part of Cochran's complaint wherein he alleges that on or about March 6, 1968, the Power Company "wilfully, wantonly and negligently removed the power line ... and terminated the supply of power to the mines ...."

Rule 8(c) of the West Virginia Rules of Civil Procedure provides that:

(c) *Affirmative Defenses.* In pleading to a preceding pleading, a party shall set forth affirmatively ... statute of limitation ... and any other matter constituting an avoidance or affirmative defense.

In response to this rule, Power Company argues that Cochran's complaint erroneously alleges that power was terminated on March 6, 1968, and that until Cochran's evidence was brought forth it was unaware that power was in reality terminated on March 3, 1966, exactly four years before the action was filed.

In *Carter v. Willis*, 145 W. Va. 779, 117 S.E.2d 594 (1960) this Court discussed the applicable theories of recovery when a public utility fails to properly supply the customer. In *Carter* the plaintiff sought relief for the utility's failure to supply enough water. At 783-84, 117 S.E.2d at 597, this Court held that:

It is true that the duty arises out of a contract between plaintiff and defendant wherein the defendant agreed to supply the plaintiff with an adequate amount of water in return for a monetary consideration. Nevertheless, in such a situation the plaintiff may, at his option, maintain an action, *ex contractu,* for breach of contract, or an action *ex delicto,* for breach of duty, where the defendant negligently fails to comply with the terms of his contract.

The first paragraph of the complaint alleges that the parties "entered into a contract," and the second alleges wrongful termination "in violation of the agreement entered into." We feel that the complaint, set forth above in full, clearly and unambiguously alleged a breach of contract.

This was at one time apparently clear to the Power Company as well since its answer admits in its second defense the existence of the contract in question but "affirmatively avers that [it] removed its power line in a proper manner ... with due regard for all rights ... under the contract between [it] and ... Newman Cochran ..." Furthermore, in its third defense it "affirmatively alleges, as a full and complete defense to the claim ... that the contract ... was in all respects fully, completely and carefully executed and carried out by [it] ...."

But what about the language, "wilfully, wantonly and negligently," appearing in the complaint? A summary of the relevant law is set forth in 1 Am Jur.2d *Actions* § 8 (1962) as follows:

If the action is not maintainable without pleading and proving the contract, where the gist of the action is the breach of the contract, either by malfeasance or nonfeasance, it is, in substance, an action on the contract, whatever may be the form of the pleading. *If the plaintiff states a cause of action for breach of contract, additional averments appropriate to a cause of action for a wrong will not convert the cause of action into one*

> *for tort, and the part of his pleading appropriate to an action in tort will be considered surplusage.* And even though an action may be in the form of tort, yet, if the subject of it is based on contract, the action will be attended by all the incidents of an action ex contractu. (emphasis added.)

Most jurisdictions addressing the issue have held that a complaint that could be construed as being either in tort or on contract will be presumed to be on contract. *See, e.g., McClure v. Johnson,* 50 Ariz. 76, 69 P. 2d 573 (1937); *State Highway Commission of Kansas v. Puskarich,* 148 Kan. 388, 83 P.2d 132 (1938); *Fuchs v. Parsons Construction Co.,* 160 Neb. 188, 88 N.W.2d 648 (1958); *Vogel v. Cobb,* 193 Okla. 64, 141 P.2d 276 (1943); *Callopy v. Citizens Bank of Darlington,* 223 S.C. 493, 77 S.E.2d 215 (1953).

Furthermore, courts frequently adopt the approach that the action should ordinarily be construed so as to avoid the bar of the statute of limitations whenever the action would be barred in one form but not in the other. *See, e.g., Southern Pacific Railway Co. v. Gonzalez,* 48 Ariz. 260, 61 P.2d 377 (1936); *McClure v. Johnson, supra; Matthys v. Donelson,* 179 Iowa 1111, 160 N.W. 944 (1917).

We thus hold that a complaint that could be construed as being either in tort or on contract will be presumed to be on contract whenever the action would be barred by the statute of limitation if construed as being in tort. In this case we find no reversible error in the trial court's ruling on this point below.

Power Company's second assignment of error is based upon general, unexplained objections it made at trial to Cochran's testimony regarding the value of certain machinery and material lost in the mine. Each of these general objections was overruled, and Cochran was permitted to state his opinion of the values of the various articles of property destroyed. The almost universal rule is that an appellate court need not consider grounds of objection not presented to the trial court. *See, e.g., An-*

*derson v. United States*, 417, U.S. 211, 94 S. Ct. 2253, 41 L. Ed.2d 20 (1974), *aff'g.* 481 F. 2d 685 (4th Cir. 1973); W. Va. R.C.P. 46. Nevertheless, we will deal with Power Company's objection and assume on its behalf that they were directed to the competency of Cochran to testify as to the value of his equipment destroyed by water in the mine.

It is firmly established in this state that "[t]he opinion of a witness who is not an expert may be given in evidence if he has some peculiar knowledge or more knowledge concerning the subject of the opinion than jurors are ordinarily expected to have." *Moore v. Shannondale*, 152 W. Va. 549, 566, 165 S.E.2d 113, 124 (1968), *citing* syl. pt. 4, *Overton v. Fields*, 145 W. Va. 797, 117 S.E.2d 598 (1960); syl. pt. 8, *Toppins v. Oshel*, 141 W. Va. 152, 89 S.E.2d 359 (1955); syl. pt. 7, *Stenger v. Hope Natural Gas Co.*, 139 W. Va. 549, 80 S.E.2d 889 (1954); syl. pt. 4, *Lively v. Virginian Railway Co.*, 104 W. Va. 335, 140 S.E. 51 (1927); syl. pt. 8, *Cochran v. Craig*, 88 W. Va. 281, 106 S.E. 633 (1924).

Furthermore, syllabus point 4 of *Cox v. Galigher Motor Sales Co.*, ____ W. Va. ____, 213 S.E.2d 475 (1975) provides that:

> The determination of whether a witness has sufficient knowledge of the matter in question so as to be qualified to give his opinion is largely within the discretion of the trial court and will not ordinarily be disturbed on appeal unless clearly and prejudicially erroneous.

Therefore, under the longstanding, undisputed principles enunciated above, we find no abuse of discretion by the trial court in letting Cochran give his opinion of the value of the destroyed property.[1] *See Mollohan v. Black*

---

[1] Power Company additionally made during cross-examination a "motion to dismiss" Cochran's testimony on the ground that he employed the wrong standard in arriving at his opinion of the "fair market value" of the destroyed equipment. When asked to define "fair market value" he replied, "Well, its the cheapest that you can buy it for." The term has been almost universally defined as being

*Rock Contracting, Inc.,* ___ W. Va. ___, 235 S.E.2d 813 (1977).

Power Company's third assignment of error is without merit. Cochran alleges in his complaint that he paid Power Company $2,300.00 for installing electrical power. The receipt for such payment provided that "the money herewith paid by you is not subject to refund . . . ." Power Company argues solely upon the basis of this receipt that this amount paid for the installation of power lines should not have been included as recoverable damages. Surely the "no refund" provision was intended to apply so long as the contract was fulfilled by Power Company. It made clear that if electrical services were accordingly provided, then the $2,300.00 would not be refunded at the termination of the contract. But we find no support for the contention that the trial court, solely because of such a provision, should strike the $2,300.00 from the *ad damnum* clause of the complaint.

Having found no error on this point, we must, by necessity affirm the trial court's refusal to give Defendant's Instruction No. I which instructed the jury to disregard the $2,300.00 paid by Cochran under the contract. The other instruction complained of in Power Company's fourth assignment of error dealing with proximate cause and injuries, was properly refused due to the total absence of any evidence regarding injury. Furthermore, Plaintiff's Instruction 9, which was given, properly states the law regarding causation and damages and thereby renders unnecessary and repetitious Defendant's Instruction No. B.

Plaintiff's Instructions Nos. 2 and 3[2] are complained of in Power Company's fifth assignment or error as being

---

the price it will bring when offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who is under no necessity of buying it. *See, e.g., American Viscose Co. v. City of Roanoke,* 205 Va. 192, 135 S.E.2d. 795 (1964) and 16 *Words and Phrases,* "Fair Market Value" (1959).

[2] PLAINTIFF'S INSTRUCTION NO. 2

The Court instructs the jury that it was the duty of the defendant in this case, Appalachian Power Company, to use reasonable

binding, abstract, and duplicitous. We disagree, holding the instructions to be proper and distinct statements of the law and finding no error in the trial court's granting of those instructions.

Finally, the trial court did not err in failing to grant Power Company's motion for remittitur to an amount not to exceed $1,324.00 (the sum of minimum royalty payments and taxes for four years). As discussed above, competent evidence was additionally brought forth by Cochran as to the value of his destroyed machinery and mining equipment. Thus, there was ample evidence to support the jury's verdict of $5,000.00. This Court, not faced with a verdict that is excessive in a definitely ascertainable amount, can find no error in the trial court's failure to grant the motion for remittitur. *Jordan v. Bero,* ____ W. Va. ____, 210 S.E.2d 618 (1974); *Earl T. Browder, Inc. v. County Court of Webster Co.,* 145 W. Va. 696, 116 S.E.2d 867 (1960).

The judgment of the Circuit Court of McDowell County is affirmed.

*Affirmed.*

NEELY, JUSTICE, *dissenting:*

I dissent on the grounds that syl. pt. 1 is wrong and the lower court should have granted the appellant Power Company's motion to dismiss on statute of limitations

---

care at all times to provide the plaintiff with a sufficient amount of electricity to enable plaintiff to operate his coal mine.

PLAINTIFF'S INSTRUCTION NO. 3

The Court instructs the jury that the defendant, Appalachian Power Company, had a monopoly in the area where plaintiff's mine was located for supplying electricity to customers and said electric Company operated under rules and regulations approved by the Public Service Commission of the State of West Virginia; and, as an electric Company operating under the circumstances, the defendant was required to supply to plaintiff electricity in sufficient quantity to operate the mines belonging to plaintiff, and the defendant had no right to terminate the electric supply to said mines so long as the plaintiff was current in his payment of bills owed to the defendant.

grounds. It is obvious that the appellee pled a good cause of action coming within the statute of limitations; however, at trial he proved only a cause of action barred by the statute of limitations.

Appellees alleged that on or about March 6, 1968 the appellant Power Company "... willfully, wantonly and negligently ..." removed the power line and thus terminated appellant's power supply. The complaint was filed on March 3, 1970. Appellant's evidence at trial showed that the power was actually terminated on May 3, 1966, four years before the action was filed. Appellant Power Company contends, and I agree, that the action was thus barred by the two year statute of limitations applicable to personal actions for property damage. *W.Va. Code*, 55-2-12 [1963]. While the complaint alleged a written contract giving rise to a duty, the action brought was tortious in nature. Many tort actions have their origins in contracts. As this Court noted in *Homes v. Monongahela Power Co.*, 136 W. Va. 877, 69 S.E.2d 131 (1952):

> Where the transaction complained of had its origin in a contract which places the parties in such a relation that in attempting to perform the promised service the tort was committed, the breach of contract is not the gravamen of the action. The contract in such case is mere inducement, creating the state of things which furnishes the occasion of the tort, and in all such cases the remedy is an action *ex delicto* and not an action *ex contractu.*
> 136 W. Va. at 884, 69 S.E.2d at 136, citing 12 Am Jur., *Contracts*, § 459 (1938).

While a contract was alleged in the complaint, there was no express charge of breach of contract. Rather the appellees used words that denote tort exclusively such as "willfully, wantonly and negligently." *Accord, Family Savings and Loan, Inc. v. Ciccarello,* ___ W. Va. ___, 207 S.E.2d 157 (1974).

Furthermore, the measure of damages is differrent in tort than it is in contract although this case does not warrant a dissertation on that subject.

The proof of damages was at best sloppy. The reason that strict standards of proof of damages are required is that it is usually impossible for the defendant to offer *any* proof concerning damages whatsoever. To say that the defendant offered no countervailing proof is to say nothing; the real question is whether plaintiff proved his damages under applicable rules of evidence, and in this case he did not.