## IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**TIMOTHY DAGOSTINE and
RAMONA DAGOSTINE,
Plaintiffs Below, Petitioners**

**FILED**

**October 28, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 23-ICA-413**        (Cir. Ct. Kanawha Cnty. Case No. 22-C-941)

**MARK PENDLETON, CPA and
WASHINGTON STREET LEGACY, LLP,
Defendants Below, Respondents**

### MEMORANDUM DECISION

Petitioners Timothy and Ramona Dagostine (collectively, the "Dagostines") appeal the August 16, 2023, order of the Circuit Court of Kanawha County which granted Respondents' motion to dismiss. Respondent Mark Pendleton, CPA, and Respondent Washington Steet Legacy, LLP, ("WSL") (collectively "Respondents") timely filed a response.[1] The Dagostines filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law, but we find there is error in the circuit court's order. Accordingly, a memorandum decision is appropriate under the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure. For the reasons below, the circuit court's order is reversed, and the matter is remanded.

The Dagostines initially filed suit against the Respondents in the United States District Court for the Southern District of West Virginia on May 9, 2022.[2] The complaint alleged that the Dagostines contracted with the Respondents in exchange for a fee to help timely maintain an agreement the Dagostines had with the IRS to repay back taxes. The

---

[1] The Dagostines are represented by Guy R. Bucci, Esq., Ashley N. Lynch, Esq., and Ronald N. Walters, Jr., Esq. Respondents are represented by Pamela C. Deem, Esq., and John Hoblitzell, III, Esq.

[2] Although the circuit court's order indicates that this date was actually May 19, 2022, the District Court's Memorandum Opinion and Order states that suit was filed on May 9, 2022. *See Dagostine v. Pendleton*, No. 2:22-CV-00220, 2022 WL 16950281, at *1 (S.D. W. Va. Nov. 15, 2022).

1

complaint further alleged that the Dagostines supplied the required information to Mr. Pendleton who failed to provide the information to the IRS, which resulted in the cancellation of the agreement between the IRS and the Dagostines. On November 15, 2022, the federal court dismissed the matter on the basis that it lacked subject matter jurisdiction because there was no federal question presented in the complaint. Relevant to the arguments on appeal to this Court, the District Court held:

> Defendants Pendleton and Robey dispute that Plaintiffs have alleged a breach of contract, arguing instead the claim sounds in tort (ECF No. 20 at 4-7). Because the Court lacks subject-matter jurisdiction and cannot resolve this dispute, the Court assumes without deciding that Plaintiffs have brought a contract claim.

*Dagostine v. Pendleton*, No. 2:22-CV-00220, 2022 WL 16950281, at \*4 n.6 (S.D. W. Va. Nov. 15, 2022).

Following dismissal by the federal court, on January 6, 2023, the Dagostines filed their amended complaint in the Circuit Court of Kanawha County. The amended complaint does not name a specific cause of action. Rather, the amended complaint has sections titled "Jurisdiction", "Parties and Venue", "Factual Basis for Claims", and "Request for Relief." The amended complaint specifically alleges:

11. That at all times material hereto, Defendants, . . . including Defendant Pendleton had previously contractually agreed to represent Plaintiffs in the negotiation and maintenance of this Agreement in providing updated financial information to the IRS and federal income tax compliance and in federal income tax collection as prescribed in provisions of the federal income tax code and applicable federal income tax regulations.

12. That in fact, Plaintiffs engaged Defendants, and Defendants, contractually, in exchange for a fee, agreed to provide services, including to timely submit and confirm receipt by the Internal Revenue Service of updated financial information on behalf of Plaintiffs, and to maintain Plaintiffs' Agreement with the Internal Revenue Service (IRS).
. . .

14. That in fact, Plaintiffs duly appointed Defendant Pendleton as their Power of Attorney pursuant to the IRS prescribed form for this purpose, and Defendant Pendleton, represented to the Plaintiffs he timely submitted to the IRS the required and requested updated financial information on forms prescribed by the IRS and that such information was timely received by the IRS.

. . .

16. That on or about November 1, 2017, the IRS notified Plaintiffs of the need to discuss or review the Agreement and provide updated financial information as prescribed in the Agreement and by the federal income tax code and by federal tax regulations or face termination of their Agreement and Defendant Pendleton agreed to submit the subject updated financial information to the IRS and confirm to Plaintiffs it was received by the IRS.

17. Defendant Pendleton thereafter frequently represented to Plaintiff that they promptly and timely submitted on November 15, 2017, this required and requested updated financial information on the prescribed form of the IRS and dated November 7, 2017, as he had agreed he would and thereby preserved Plaintiffs Agreement with the IRS.
. . .

19. That on April 23, 2018, Plaintiffs were notified for the first time, not by Pendleton, but by the IRS that the updated financial information had not been received from Pendleton. As a result their Agreement was cancelled and not preserved which was contrary to Pendleton's frequent verbal, personal and electronic confirmations to Plaintiffs that he had timely furnished the necessary information to the IRS and was received by the IRS to maintain the Plaintiffs' Agreement with the IRS.
. . .

21. That as a direct and proximate result of Defendants' breach of their agreement and contract with Plaintiffs to timely complete the update of their financial information to submit to the IRS and confirm its receipt as described herein and in not timely appealing a denial of the payment agreement extension as required by the parties contractual agreement the IRS terminated and cancelled the Plaintiffs' Agreement and Plaintiffs forever lost the financial benefit of that agreement.

On March 3, 2023, Respondents moved to dismiss the amended complaint on the basis that the Dagostines' claims sounded in tort and were, therefore, barred by the applicable two-year statute of limitations, or, in the alternative, their claims were barred by the express terms of what is referred to as a negative response letter, which Respondents attached to their motion. The negative response letters are explained in greater detail in the affidavit of Steven Robey, a partner with WSL, which was attached to the Respondents' reply to the Dagostines' response to the motion to dismiss. According to the affidavit, the negative response letters are form letters sent to WSL clients each year. The letters contained terms and conditions that Respondents assert are binding, but the negative response letters do not require the clients to sign or acknowledge the document in any way. Rather, by sending WSL their tax information each year, the clients

3

were agreeing to be bound by the terms and conditions of the negative response letters. According to the Respondents, this document gave the Dagostines a one-year statute of limitations to file suit.

On August 16, 2023, the circuit court entered an order granting the motion to dismiss. In that order, the circuit court concluded that the Dagostines' claims sounded in tort and were, therefore, barred by the applicable statute of limitations, and in the alternative, even if the claims sounded in breach of contract, the claims were time barred by the one-year limitation found in the negative response letter. The circuit court concluded that the Dagostines' amended complaint implicitly refers to the negative response letter and therefore it was appropriate to consider the negative response letters at the motion to dismiss stage. It is from this order that the Dagostines appeal.

On appeal, we apply the following standard of review: "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995). "A court reviewing the sufficiency of a complaint should view the motion to dismiss with disfavor, should presume all of the plaintiff's factual allegations are true, and should construe those facts, and inferences arising from those facts, in the light most favorable to the plaintiff." *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 520, 854 S.E.2d 870, 882 (2020) (citing *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 538, 236 S.E.2d 207, 212 (1977)).

The Dagostines assert five assignments of error. First, the Dagostines argue that the circuit court erred in relying on extrinsic materials provided in the Respondents' reply to the Dagostines' response to the motion to dismiss. Second, they argue that the circuit court erred by not accepting the allegations in their amended complaint as true. Third, they argue that the circuit court erred by violating the well-established rule that when a complaint could be construed as sounding in tort or contract, it should be presumed to sound in contract whenever the action would be barred by the statute of limitations if construed as sounding in tort. Fourth, they argue that the negative response letters create an admission against the interests of the Respondents and the negative response letters otherwise are ambiguous and unenforceable against the Dagostines. Finally, the Dagostines argue the circuit court erred in relying on extrinsic evidence outside the pleadings at the motion to dismiss stage. Due to the assignments of error being closely related, we consolidate them in our analysis below. *See generally Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (allowing consolidation of related assignments of error).

With our standard of review in mind, we first turn to the issue of whether the Dagostines' complaint sounds in tort[3] or contract.[4] "In West Virginia, the elements of breach of contract are (1) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract; and (3) damage arose from the breach." *Nance v. Huntington W. Va. Hous. Auth.*, No. 16-0855, 2017 WL 2210152, at *5 (W. Va. May 19, 2017) (memorandum decision). The essential elements in an action for fraud are: "(1) [t]hat the act claimed to be fraudulent was the act of defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." *Horton v. Tyree*, 104 W.Va. 238, 139 S.E. 737, 738 (1927). "[A] complaint that could be construed

---

[3] The tort statute of limitations is found at West Virginia Code § 55-2-12 (1959):

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

[4] The contract statute of limitations is found at West Virginia Code § 55-2-6 (1923):

Every action to recover money, which is founded upon an award, or on any contract other than a judgment or recognizance, shall be brought within the following number of years next after the right to bring the same shall have accrued, that is to say: If the case be upon an indemnifying bond taken under any statute, or upon a bond of an executor, administrator or guardian, curator, committee, sheriff or deputy sheriff, clerk or deputy clerk, or any other fiduciary or public officer, within ten years; if it be upon any other contract in writing under seal, within ten years; if it be upon an award, or upon a contract in writing, signed by the party to be charged thereby, or by his agent, but not under seal, within ten years; and if it be upon any other contract, express or implied, within five years, unless it be an action by one party against his copartner for a settlement of the partnership accounts, or upon accounts concerning the trade or merchandise between merchant and merchant, their factors or servants, where the action of account would lie, in either of which cases the action may be brought until the expiration of five years from a cessation of the dealings in which they are interested together, but not after.

5

as being either in tort or on contract will be presumed to be on contract whenever the action would be barred by the statute of limitation if construed as being in tort." *Cochran v. Appalachian Power Co.*, 162 W. Va. 86, 93, 246 S.E.2d 624, 628 (1978).

In deciding that the Dagostines' complaint sounded in tort, the circuit court concluded that because the Dagostines "fail to allege a breach of the specific terms," the Dagostines' claims sound in tort. However, "a plaintiff has no duty to specify precisely which term or paragraph of the contract was breached in order to properly state a claim; a plaintiff must only provide fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Mountaineer Fire*, 244 W. Va. at 529, 854 S.E.2d at 891. Here, the Dagostines' complaint provides fair notice of what their claim is and the grounds upon which it rests. The complaint specifically alleges that a contract existed between the parties, the Respondents breached the contract, and the Dagostines suffered damages thereby.[5] While there is some language in the complaint that would indicate that the Dagostines are asserting a tort claim for fraudulent misrepresentation, the subject of the complaint is clearly based on a contract between the parties and we feel that the complaint, as set forth above, clearly and unambiguously alleged a breach of contract. Accordingly, the circuit court erred by concluding that the Dagostines' complaint sounded in tort and should be dismissed based on the statute of limitations for tort actions.

We now turn to the issue of whether the circuit court properly relied on the negative response letters at the motion to dismiss stage and, therefore, properly concluded that the Dagostines' complaint should be dismissed based upon the statute of limitations found in the negative response letters. The Supreme Court of Appeals of West Virginia has held:

> Only matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment and disposed of under Rule 56 R.C.P. if there is no genuine issue as to any material fact in connection therewith[.]

Syl. Pt. 4, in part, *United States Fid. & Guar. Co. v. Eades*, 150 W. Va. 238, 144 S.E.2d 703 (1965) (*overruled on other grounds by Sprouse v. Clay Commc'n, Inc.*, 158 W. Va. 427, 211 S.E.2d 674 (1975)). A limited exception to this rule exists where a document is annexed to a pleading:

> [T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may

---

[5] The Court notes that "a party is not required to establish a *prima facie* case at the pleading stage." *Mountaineer Fire*, 244 W. Va. at 522, 854 S.E.2d at 884.

6

nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint . . .

*Mountaineer Fire*, 244 W. Va. at 527, 854 S.E.2d at 889 (citation omitted). Additionally, while courts may be permitted to consider documents attached to a motion to dismiss, "[b]efore relying on extraneous materials attached to a motion to dismiss, a trial court must be assured that the authenticity of the materials is undisputed. If the materials are of questionable provenance or are subject to competing interpretations, courts should avoid factoring them into their equation." *Id*.

Here, the negative response letters are not attached to the complaint. Further, presuming all of the Dagostines' factual allegations are true and construing those facts and inferences arising from those facts in the light most favorable to the Dagostines, the negative response letters are not incorporated by reference in the Dagostines' complaint and their complaint does not rely heavily upon their terms and effect. While it may ultimately be true that the negative response letters form the basis, or some part thereof, of the contract between the parties alleged in the Dagostines' complaint, there is nothing in the four corners of the complaint that indicates that the negative response letters are the operative contract between the parties. Further, the authenticity and applicability of the negative response letters remains a central issue. While this court can take judicial notice of the pleadings and allegations brought before the District Court to establish and review the Dagostines' positions and change thereof, the court below should not have accepted or permitted these documents at this stage given the concern with authenticity. The requisite reliance on an affidavit in order to support authenticity goes well beyond the scope of the circuit court's review at the motion to dismiss stage and therefore the circuit court erred in considering the negative response letters without converting the motion to dismiss into a motion for summary judgment. Accordingly, the circuit court erred in concluding that the statute of limitations found in the negative response letters barred the Dagostines' complaint.

Therefore, based on the foregoing, the August 16, 2023, order of the Circuit Court of Kanawha County is reversed, and this matter is remanded for further proceedings.

Reversed and Remanded.

**ISSUED:** October 28, 2024

**CONCURRED IN BY:**
Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear