# CHARLESTON.

WHEELING STEEL CORPORATION *v.* PUBLIC SERVICE COMMISSION *et al.*

Submitted January 11, 1922.  Decided January 24, 1922..

PUBLIC SERVICE COMMISSIONS—*Could Not Find That Corporation Exceeded Rates No Longer Applicable to Service Rendered.*

The Public Service Commission of West Virginia has no authority to entertain a complaint for the purpose of determining that a public service corporation has charged rates in excess of those authorized, when it appears that the rate which it is contended was applicable, and which such cor-

poration is charged with exceeding, is no longer applicable to the service rendered, and the decision sought could only be for the purpose of fixing a basis for recovery of the amount of the excessive charge.

Proceedings by the Wheeling Steel Corporation to compel the State Public Service Commission to direct the Wheeling Electric Company to refund excessive portion of charge for services.

*Relief denied, and petition dismissed.*

*McCamic & Clarke,* for petitioner.

*J. Bernard Handlan* and *G. Alan Garden, M. F. Millikan* and *J. P. Van De Voort,* for respondent.

RITZ, JUDGE:

By this proceeding the Wheeling Steel Corporation seeks to compel the Public Service Commission of West Virginia to decide that the amount charged it for service by the Wheeling Electric Company was in excess of the amount which said company could properly charge, and to direct said company to refund the amount in excess of the legal rate as contended for by the petitioner. The Public Service Commission determined that it had no jurisdiction to order the electric company to make any refund, and that the question whether or not the rate contended for by the petitioner was a proper rate had become moot for the reason that the contract under which it claimed the right to this rate had expired by its own terms, and the case is here to compel the Commission to decide these questions.

On the 23rd of October, 1911, the Wheeling Electric Company entered into a contract with Henry Schmulbach by which it agreed, for a consideration of $6,750.00 per year, payable in monthly instalments of $562.50, to furnish electric current to the Schmulbach building for the purpose of lights and power, and also agreed for said consideration to furnish steam heat for the purpose of heating said building. The contract, it seems, was entire, the agreement being to furnish electric current for the purpose of lights and power, and steam for the purpose of heating the building for the con-

90 W. Va.

sideration aforesaid. At that time Schmulbach had a heating plant and an electric plant in the building, and these were taken over by the electric company. Under this contract the electric company furnished electric current to Schmulbach for the building and also provided the steam for heating the same from the plant in the building until Schmulbach, or his successors, sold the building to the Wheeling Steel Corporation, on the 31st day of July, 1920.

It appears that in the month of January, 1919, upon an application made to it for that purpose, the Public Service Commission of West Virginia prescribed rates to be charged by the electric company to its customers for electric current both for light and power. The electric company, however, did not apply these rates to the Schmulbach building until it was purchased by the Wheeling Steel Corporation on the 31st day of July, 1920, more than a year after the rates were established.

After the Wheeling Steel Corporation took over the building on the 1st day of August, 1920, the electric company charged it for the electric current a different rate from that prescribed in the contract, putting it in one of the classifications prescribed in the schedule of rates established by the Public Service Commission, and declined after that time to furnish steam for the purpose of heating the building. This resulted in a charge being made for electric current very much in excess of that called for in the contract. In fact, it appears from the record that the electric company charged and collected from the steel corporation practically twice as much, under the schedule of rates fixed by the Public Service Commission, for electric current alone as it had agreed to accept, not only for electric current, but for heating the building with steam as well. When the electric company notified the steel corporation of its determination to charge the increased rates the steel corporation protested, and demanded that it was entitled to have the service contracted for by its predecessor under the terms of that contract, but, in order to prevent the service from being withdrawn from it, it paid the bills presented under protest, and promptly filed a petition with the Public Service Commission charging that

the electric company was exacting from it an amount for electric current which was unjust and unauthorized, and asked the Public Service Commission to require the electric company to desist from such practice, and to furnish it electric current under the terms of the contract above referred to; and, further, to direct the electric company to return to it any amounts collected in excess of the contract rate. The contract relied upon by the steel corporation expired by its own terms on the 31st of October, 1921. A hearing was had before the Public Service Commission on this petition, and on the 1st of November, 1921, that Commission held that after this contract had expired there was no live question for it to decide; that the steel corporation would not be entitled to have the benefit of the contract after its expiration; and that whether it was entitled to the rate for the service prescribed in said contract for the service rendered it in the past, and was entitled to have refunded to it the amounts charged in excess of the amounts fixed in said contract, were matters beyond the jurisdiction of the Commission; and that so far as the matters which were within the jurisdiction of the Commission at the time of the filing of the petition were concerned, they had become moot by lapse of time, for which reason the petition was dismissed.

The contention of the Wheeling Steel Corporation is that by entering into the contract with its predecessor the electric company classified its building for the purpose of rendering it service, and that this classification could not be changed except by authority of the Public Service Commission and that the order of the Public Service Commission made in January, 1919, prescribing rates to be charged by the electric company for service did not apply to the Steel Corporation for the reason that the contract under which service was furnished to it was not specifically mentioned in that proceeding, nor was it made a formal party thereto. Its contention is that the electric company could not cease to furnish it service under the contract in advance of its expiration unless in some proper proceeding the contract was declared by the Public Service Commission to be unreasonable and therefore ineffective. Manifestly, the steel

corporation had no right to demand service from the electric company under the terms of that contract after the expiration of the same. Whatever may be said as to its application to the relations of the parties during its continuance, it cannot be insisted that after its expiration the steel corporation had any right to demand that the electric company furnish it electric current in accordance with its terms, so that at the time this question was decided by the Public Service Commission of West Virginia the question remaining to be determined was not whether the electric company was indulging in an unfair or unlawful practice, or was charging an unreasonable and unauthorized rate, but whether it had done so in the past, on account of which the steel corporation was entitled to a recovery against it. If the contention of the steel corporation, that the electric company could only charge the amount prescribed by the contract during its continuance, is correct, then it has a right to recover from the electric company the excess charged. If, on the other hand, the rate applicable to the service rendered during that time is that prescribed by the schedules adopted by the Public Service Commission in January, 1919, there is no right of recovery. There is no question involved here as to whether a rate prescribed and being charged by a public service corporation is a reasonable rate. The question is simply, was the rate prescribed by the contract in effect, or was the rate prescribed by the Commission the applicable one? It may be said that at the time the petition was filed with the Public Service Commission there was a question which it could have determined, that is, whether the practice indulged in by the electric company in charging the rate which it was charging was one authorized by law. But pending the proceeding, by lapse of time, the contract under which the steel corporation contends that it was entitled to a different rate from that charged has expired, so that there is not now, nor was there at the time the Public Service Commission decided the case, any question of an unlawful practice being then indulged in, or an unauthorized rate being demanded. The proceeding had become one in which there was nothing involved but reparation for past in-

juries if, indeed, there was any right to relief at all. Did the Public Service Commission have any jurisdiction to grant such relief?     The contention of the steel corporation is that the charge made by the electric company was in excess of that lawfully prescribed at the time.     If this is true, then it had a clear remedy by an action at law to recover back the amount paid in excess of the legal rate.     This is not a case where it is contended that the rate prescribed is unreasonable. In such a case as that it may be that before a suit could be brought to recover back any part of the amount charged and paid the unreasonableness of the rate would have to be established before the Public Service Commission.     Here the contention of the steel corporation is that the rate relied upon by it has been established, and was in existence undisturbed in any way, and that the electric company simply applied to it a rate which did not under the law have any application.     This being so, it seems quite clear to us that the remedy is a suit to recover back the amount paid in excess of the prescribed rate if it should turn out that the steel corporation is right in its contention. Of course, if a public service corporation would attempt to charge a rate not prescribed, the party affected by such action could have the Public Service Commission compel it to discontinue such practice, but the Public Service Commission would have no authority to render a judgment for the amount which had theretofore been charged in excess of the proper rate.     If a public service corporation, under such circumstances, would refuse to refund the excess, the only remedy left to the aggrieved party would be an action at law to recover it.     Section 18 of the Public Service Commission Act clearly authorizes a suit to be brought in any circuit court having jurisdiction to recover for an injury done by a public service corporation by indulging in any practice not allowed by law.     In fact, the jurisdiction and authority of the Public Service Commission extends no further than to prescribe proper rates, and proper practices, and to direct the public service corporations to comply with them in the future.     If a public service corporation should then refuse compliance it would be necessary for the Public Service Commission, or some party interested, to invoke the aid

of a court of competent jurisdiction to compel compliance with the order; and likewise, if by refusal to comply with an order of the Public Service Commission, or with a rate lawfully prescribed, injury has resulted, the injured party may recover compensation therefor in any court of competent jurisdiction.

It follows from what we have said that the conclusion of the Public Service Commission was correct, and the relief asked will be denied.

*Relief denied, and petition dismissed.*