NATURAL GAS COMPANY OF WEST VIRGINIA *v.* HON. J. B. SOMMERVILLE, *Judge, et al.*

(No. 7448)

Submitted October 20, 1932. Decided November 22, 1932.

*David E. Mitchell, Rummel, Blagg & Stone, Caldwell, Kline & Mead,* and *Harold A. Ritz,* for petitioner.

*O'Brien & O'Brien, Carl B. Galbraith, Carl O. Schmidt, Carl G. Bachmann, Charles J. Schuck, W. C. Grimes, Hugo F. Blumenberg, Ralph L. Miller, McCamic & Clarke,* and *Jay T. McCamic,* for respondents.

MAXWELL, JUDGE:

This is an original jurisdiction proceeding in prohibition to prevent the prosecution of a chancery suit in the circuit court of Ohio County.

In said suit William P. Wilson and seven other individuals are plaintiffs, and the Natural Gas Company of West Virginia (petitioner herein), the City of Wheeling, the City of Benwood, and the Wheeling Chamber of Commerce are defendants. The plaintiffs sue on behalf of themselves and all other customers of said Gas Company which is a public utility furnishing natural gas for domestic and industrial consumption in Wheeling and Benwood and their environs. It is alleged in the bill that the utility has been charging an illegal rate for gas. The main object of the suit is to require of the utility an accounting to its customers for the amounts paid it by its customers under the alleged illegal rate in excess of the alleged legal and proper rate. In the instant proceeding (prohibition) the utility (petitioner) prays that the circuit court of Ohio County be prohibited from proceeding further in said chancery suit because of lack of jurisdiction.

In October, 1919, the Gas Company (petitioner) filed an application before the Public Service Commission of West Virginia for an increase of rates. By an order entered March 20, 1920, effective April 15, 1920, the commission fixed the rate to be charged by said company for natural gas at forty cents per thousand cubic feet, subject to a discount of two cents per thousand cubic feet if paid on or before the 12th day of the month following that in which the gas was supplied.

In 1922, the Gas Company again petitioned for an increase of rates. This precipitated a long controversy, the outcome of which was an order entered by the commission June 26, 1924, fixing the rate at fifty-two cents per thousand cubic feet, subject to discount of two cents for prompt payment, "said rates to be effective from the meter readings beginning about the 15th day of June, 1924, until the meter readings beginning about the 15th day of December, 1927." This finding was in pursuance of an agreement entered into between the Gas Company, the City of Wheeling, the City of Benwood, and the Wheeling Chamber of Commerce. Other features of that agreement were that the Gas Company should dismiss its then pending petition for increase of rates; that the Gas Company should, if necessary, in order to furnish a reasonably adequate supply of gas to domestic consumers, expend in its southern district in each fiscal year ending July 31st (subsequent to August 1, 1924), during the term of said agreement, and proportionately for that period between July 1, 1927, and December 31, 1927, in addition to its normal expenditures in the southern district for the extension of gas territory and for the production of additional gas "a sum equal to the increase in gross gas receipts for the said fiscal year ending July 31, 1924, and not exceeding in any one fiscal year the sum of $250,000."

The plaintiffs in the chancery suit take the position that even if the Public Service Commission's order of June 26, 1924, fixing a fifty-two cent rate be a lawful order (they do not admit the legality of said order, but challenge it), the rate fixed by said order expired under its own terms December 15, 1927, and therefore they say that the Gas Company should account to its customers for the difference between the forty cent rate and the fifty-two cent rate, from and subsequent to the 15th of December, 1927. It is the contention of the said plaintiffs that if the said order of July 26, 1924, was not legal, then the prior rate of forty cents per thousand cubic feet remained operative, and that if the said order was legal, then, at the expiration date fixed by it, to-wit, December 15, 1927, the forty cent rate was automatically reinstated. If the order of July 26, 1924, was not a lawful order, the plaintiffs claim right of recovery from the date thereof.

The Gas Company contends for the legality of the Public Service Commission's order of June 26, 1924, and takes the position that the only purpose of the limitation period expiring December 15, 1927, as fixed by said order, was to preclude either the Gas Company or the other parties to the compromise agreement from instituting proceedings for a change of rates prior to December 15, 1927, and that subsequent to said date the said fifty-two cent rate remained in effect until changed by an order of the Public Service Commission. The company takes the further position that no cause of action lies against it by its customers for any portion of sums paid by them for gas, in the absence of a determination by the Public Service Commission that the rate enforced by the company was unreasonable. Therefore, it urges that it is entitled to the writ of prohibition for which it prays in this proceeding.

On the other hand, the plaintiffs in the chancery suit (of respondents herein) take the position that their claim for recovery of excess charges does not involve a question of reasonableness of rates, but rather a question of legality of rates; that the Public Service Commission in the proceeding now pending before it under a petition of the City of Wheeling filed August 14, 1931, for a reduction of rates, may determine the reasonableness of the existing rate from said date, and fix such a rate beginning as of that date as may seem reasonable and just, but that the commission has no authority to pass upon the right of recovery by the customers of the Gas Company for alleged excess collected by it prior to August 14, 1931.

In the aforesaid proceeding now pending before the Public Service Commission on the said petition of the City of Wheeling for revision of rates charged by the Gas Company, the said city on October 1, 1931, moved the commission to require the Gas Company "to charge the customers served by it in accordance with the rates prescribed and determined by this commission by an order entered on the 20th day of March, A. D., 1920, in case No. 947, and that the defendant utility be restrained, inhibited and enjoined from charging the rates set out in an order of this commission entered on the 26th day of June, 1924, in case No. 1361." By order of November 25, 1931, the commission overruled said motion but required of the Gas Company that it "keep and preserve true and accurate ac-

counts and records of all monies received by it from its custom-- ers in this state so as accurately and completely to show the several amounts received monthly from each of its customers from the rates stated in its tariff, in order that such order may be made and such further proceedings had as are authorized by law and warranted by the facts brought out in the investigation now pending.'' The evident purpose of that requirement was to afford basis for recovery of excess from that date, or possibly from the date of the institution of said proceeding, August 14, 1931, if the commission should later determine that the rate being charged by the company was in excess of a reasonable and proper rate. Upon petition of the City of Wheeling to this court for an appeal from the said order of the commission overruling the motion of the City of Wheeling, a majority of the court refused the appeal. We were of opinion that by its said order the commission had conserved the right of the ratepayers to recover from the Gas Company any excess paid by them subsequent to the filing of the said petition of the City of Wheeling, over and above that which may be determined by the commission as a proper rate; that the real question there presented was one purely of reasonableness of rate (a matter of which the Public Service Commission alone has primary jurisdiction); and therefore that there was no occasion for review by this court. ''Whether rules, regulations and practices of a public service corporation subject to the provisions of chapter 15-0, Code 1918, adopted by the company to govern its dealings with its patrons, are unreasonable or unduly discriminatory, are questions primarily within the competency of the Public Service Commission, and not subject to judicial supervision until that body has had an opportunity to exert its delegated administrative functions.'' *State ex rel. Croy* v. *Bluefield Water Works, etc.,* 86 W. Va. 260, 103 S. E. 340.

The question of the right of ratepayers to recover for alleged excess, paid by them prior to the institution of the inquiry now pending before the commission for the determination of a reasonable and proper rate, was not before the commission at the time it considered the aforsaid motion of the City of Wheeling of October 1, 1931; was not before this court on petition for appeal from the order of the commission

overruling the said motion of the City of Wheeling; and is not now before the commission. In fact, such matter could not properly be injected into any inquiry before the commission. Therefore, the said chancery suit now pending in the circuit court of Ohio County, sought to be prohibited in this proceeding, presents a subject which stands *res integra*. The right of a ratepayer to sue a utility for damages is statutory.

> "Any person, firm or corporation claiming to be damaged by any violation of this chapter by any public utility subject to the provisions of this chapter, may make complaint to the commission, as provided herein, and bring suit in his own behalf for the recovery of the damages for which such public utility may be liable under this chapter in any circuit court having jurisdiction. In any such action, the court may compel the attendance of any agent, officer, director or employee of such corporation as a witness and require also the production of all books, papers and documents which may be used as evidence, and in the trial thereof such witnesses may be compelled to testify, but any such witness shall not be prosecuted for any offense concerning which he is compelled hereunder to testify." Code 1931, 24-4-7.

The question whether the charges made by the Gas Company were in excess of the legally prescribed rate in effect at the time the charges were made, presents a judicial problem of which the circuit court of Ohio County has jurisdiction. The case involves a claim of reparation for alleged injuries. The solution will depend not upon whether the charges were in excess of a reasonable rate, but whether they were in excess of the lawfully established rate. The inquiry as to what was the legal effect of the commission's order of June 26, 1924, presents a judicial question for the courts, not an administrative matter for the Public Service Commission.

If authority be needed to sustain this conclusion, it can be found in our own cases and elsewhere—not cases involving like facts (that could scarcely be expected) but cases clearly recognizing and applying the same principle in analogous situations. The case of *Wheeling Steel Corporation* v. *Public Service Commission*, 90 W. Va. 74, 110 S. E. 489, 491, is conspicuous. It appears from the facts recited in the opinion

that there had been a contract between Henry Schmulbach, owner of a large office building in the City of Wheeling, and the Wheeling Electric Company under the terms whereof the company was to furnish electricity for light and steam for heat for the said building at a fixed sum per annum payable monthly. The said contract expired by its own terms October 31, 1921. In July, 1920, the building was purchased of Schmulbach by the Wheeling Steel Corporation. After the Steel Company became proprietor of the building the Electric Company charged it a higher rate for electric service than that which had been provided for in the Schmulbach contract. The increased rate was paid by the Steel Company under protest, and a petition was promptly filed by it with the Public Service Commission charging that the electric company was exacting an unauthorized rate of the petitioner, and praying that the electric company be required to desist from such practice and to furnish electric service on the basis provided for in the Schmulbach contract; and, further, to require the electric company to make reparation for the excess which it had collected. Following a hearing, the commission held in November, 1921, that since the Schmulbach contract had expired the steel company would not be entitled to have the benefit of the electricity rate prescribed in the contract, and that whether the said company was entitled to have refunded to it the amounts charged in excess of the contract rate was a matter beyond the jurisdiction of the commission. Thereafter, by petition for mandamus in this court, the steel company undertook to compel the Public Service Commission to decide that the amounts charged the relator by the electric company for service was in excess of the amount which said company could properly charge, and to direct said company to refund the excess over the legal rate which had been charged and collected by the electric company. It was held here that if there had in fact been an excess charge as alleged by the steel company "then it (steel company) had a clear remedy by an action at law to recover back the amount paid in excess of the legal rate." And, further: "Of course, if a public service corporation would attempt to charge a rate not prescribed, the party affected by such action could have the Public Service Commission compel it to discontinue such practice,

but the Public Service Commission would have no authority to render a judgment for the amount which had theretofore been charged in excess of the proper rate.''

In *C. & O. Ry. Co.* v. *Rogers*, 75 W. Va. 556, 84 S. E. 248, 249, there was involved the question of the right of a justice of the peace to hear and determine a claim by a shipper against a railroad company for alleged excess of demurrage charged and collected. The court said: ''The question before him (the justice of the peace) in the action was not as to the reasonableness of the rate, but as to the number of days for which the rate, accepted as a legal and reasonable one, should be charged. That he had jurisdiction to determine such a question, we have no doubt. The Acts of Congress in relation to commerce do not inhibit him from the determination of such an ordinary question of common right as between litigants. They vest in the Interstate Commerce Commission the jurisdiction to say whether the rate is reasonable or unreasonable, but they do not take from a state court power to determine a fact having nothing to do with the reasonableness or unreasonableness of the rate.'' In *Great Northern Railway Company* v. *Merchants' Elevator Company*, 259 U. S. 285, the Supreme Court of the United States very succinctly stated: ''To determine what rate, rule or practice shall be deemed reasonable for the future is a legislative or administrative function. To determine whether a shipper has in the past been wronged by the exaction of an unreasonable or discriminatory rate is a judicial function. Preliminary resort to the Commission is required alike in the two classes of cases. It is required because the enquiry is essentially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the commission. * * * But what construction shall be given to a railroad tariff presents ordinarily a question of law which does not differ in character from those presented when the construction of any other document is in dispute.'' The court further said that the question presented involved determination of ''the meaning of words of the tariff which were used in their ordinary sense and to apply that meaning to the undisputed facts. That operation was solely one of construction; and preliminary resort to the commission was, therefore, unnecessary.''

For the reasons we have above set forth, and in the light of the principle stated in the cases quoted, we are of opinion that the circuit court of Ohio County has jurisdiction of the subject matter of the chancery suit of which the further prosecution is sought to be prohibited.

The remaining jurisdictional question pertains to the parties to the said chancery suit. Does the circuit court of Ohio County have jurisdiction of them? And may the suit be prosecuted in the form in which instituted? There can be no question about jurisdiction of the defendants. As above stated, they are the Natural Gas Company of West Virginia, a corporation, the City of Wheeling and the City of Benwood, municipal corporations, and Wheeling Chamber of Commerce, a corporation. And there could be no doubt of the circuit court's jurisdiction to entertain an action at law by any one of the plaintiffs, in his own right, to recover alleged excess of charges made against him by the Gas Company. But, specifically, does the circuit court of Ohio County have jurisdiction to entertain a suit in equity by eight individuals suing on behalf of themselves and about 7,500 other ratepayers, against the Gas Company as principal defendant, on purely legal demands? May this be done to avoid multiplicity of suits? There is a sharp diversity of opinion on the legal question involved. 21 Corpus Juris, page 80; 1 Pom. Eq. Juris. (4th Ed.), sec. 244. In this jurisdiction, however, the doctrine of avoidance of multiplicity of suits has been liberally applied to sustain equity jurisdiction for the prevention of vexatious litigation. Thus, we held, in *Coal Co.* v. *Bassett,* 108 W. Va. 293, 150 S. E. 745: "Several persons may properly join as plaintiffs in a suit brought for a purpose common to all, though they be not jointly interested in the subject matter of the litigation."

In his valuable work on equity procedure, Dean Hogg says: "Where the plaintiffs have a joint interest, or where they seek a common object by means of a suit, though they are not united in interest with each other, there is no misjoinder of parties." 1 Hogg's Equity Procedure, section 88. The question of avoidance of multiplicity of suits must be considered very much in the same manner as is the rule against multifariousness. In neither case is there a rule of exactitude.

"The rule which most nearly approaches that result (harmonizing the inconsistent decisions) is that the bill must relate to matters of the same nature and having a connection with each other, and in which all the parties are more or less concerned, although their rights in respect to the general subject of the case may be distinct. The matter is one within the sound discretion of the chancellor, to be exercised with a view to the substantial convenience and rights of all parties, which, it may be remarked, is the rule governing the question of multifariousness." 21 Corpus Juris, page 81.

Authority need scarcely be cited for the proposition that equity will entertain jurisdiction in matters of account, though the accounts all be on one side, if discovery is in good faith sought, and a multiplicity of suits is to be avoided. *Rothwell* v. *Brice*, 94 W. Va. 466, 119 S. E. 293.

It is also a rule of law that ordinarily where many persons are interested or concerned in the same litigable matter, there may be a representative suit on their behalf. *Bull* v. *Read*, (Va.) 13 Gratt. 78. Thus, in *Smith* v. *Swormsteadt*, 57 U. S. 288: "The rule is well established, that where the parties interested are numerous, and the suit is for an object common to them all, some of the body may maintain a bill on behalf of themselves and of the others; and a bill may also be maintained against a portion of a numerous body of defendants, representing a common interest." A clear discussion of this rule of procedure is found in *City of Grafton* v. *Holt*, 58 W. Va. 182, 52 S. E. 21.

Therefore, there seems to be no doubt of the abstract right of a court of chancery to entertain a suit by a few individuals on behalf of many, upon purely legal demands, against a principal defendant, but whether a particular suit of such nature shall, under all the attendant circumstances, be entertained, is, in the first instance, a matter within the sound judicial discretion of the trial chancellor. Clearly, therefore, we cannot say, before the chancellor has had opportunity to pass upon such matter, that he does not have jurisdiction to do so.

The writ of prohibition is refused.

*Refused.*