438 S.E.2d 890

## STATE EX REL. THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF WEST VIRGINIA, Petitioner,

v.

## Honorable John C. ASHWORTH, Judge of the Circuit Court of Raleigh County, and Beckley Hospital, Inc., Respondents.

### No. 21930.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 30, 1993.

Decided Dec. 16, 1993.

---

Gerard R. Stowers, Elizabeth B. Elmore, Bowles Rice McDavid Graff & Love, Joseph J. Starsick, Jr., Charleston, for petitioner.

Robert B. Sayre, Beckley, for Beckley Hosp., Inc.

NEELY, Justice:

The Chesapeake and Potomac Telephone Company of West Virginia (hereinafter C & P) seeks to prohibit the Honorable John C. Ashworth, Judge of the Circuit Court of Raleigh County, from conducting further proceedings in a lawsuit filed by Beckley Hospital, Inc. (hereinafter the hospital) against C & P. C & P contends that the circuit court lacks subject matter jurisdiction because the hospital failed to exhaust its administrative remedies or, in the alternative, that the circuit court should refrain and defer to the Public Service Commission (hereinafter PSC) because the issues require the special expertise of the PSC. Because of the complexity of the issues, we find that the circuit court should have deferred to the PSC. Therefore, we grant the writ.

## Í

The underlying action involves C & P's telephone service to the hospital. Before 5 November 1991, the hospital's telephone lines, at its request, were billed under a "flat rate," that the hospital alleges amounted to $93.50 per line per month. After 5 November 1991, the hospital's telephone lines, again at its request, were billed under a "measured rate," that the hospital alleges amounted to $24.50 per line per month.[1] The hospital requested the service change based on a recommendation the hospital received following an audit of its telephone bills.

On 29 January 1992, the hospital filed a complaint with the PSC (hereinafter PSC complaint), alleging that C & P had overcharged it the difference between the two services for twelve direct inward dialing (hereinafter DID) trunks connected to the hospital's private branch exchange (hereinafter PBX).[2] At the hearing before the PSC's administrative law judge (hereinafter ALJ), the hospital presented two theories for recovery: (1) the hospital's equipment entitled it to consideration as an exception to the general prohibition against mixing services (hereinafter mixing services theory)[3]; and (2) C &

1. In addition to the monthly charge, each measured rate call is "measured on a time-of-day, distance called and length-of message basis," and "[r]ates for messages between two points are based on the airline mileage between rate centers...." C & P Local Exchange Services Tariff, P.S.C.–W.Va.–No. 202 § 1(B)(6)(a) and (c).

2. According to C & P, a PBX is an on-site telephone system either owned by or leased from a source other than the telephone company. The hospital acquired its PBX system in 1989 from a local vendor. C & P provides PBX trunk lines, the telephone lines that connect the hospital's PBX to the public network. The PBX trunk lines are equipped with DID trunks.

According to John T. Scott, a witness for the hospital during the ALJ hearing, the hospital in 1989 subscribed to seven DID trunk lines and approximately one year to 16 months later, increased their DID trunk lines to twelve. According to Mr. Scott no outgoing calls could be made over the hospital's DID trunk lines.

3. The hospital's PSC complaint alleges that under the mixing services theory the DID trunks were exempt from the C & P's tariff, which generally prohibits the mixing of flat and mea-

sured services on the same premises. The tariff provides, in pertinent part, that "[d]ifferent classes of service will not be furnished to the same customer on the same premises ... except for customers who have, for example, facsimile machines or any other special type equipment on premise that is not used to access local calling...." (C & P's Local Exchange Services Tariff, P.S.C.–W.Va.–No. 202 § 1(B)(5).) The hospital's PSC complaint maintains that because the prohibition against mixing does not apply to DID trunks, the hospital's DID trunks should be billed at the measured service rate and that a refund was due for the difference between the two rates for its DID trunk lines.

According to Dannie L. Walker, a Telecommunication Engineer employed by the PSC, if mixing of services is permitted, C & P's current Commission-approved tariff should be replaced with a surcharge for mixed service. Mr. Walker testified that the hospital's proposed mixing of classes of service would allow it to make outgoing calls over its flat rate, but to receive incoming calls over its measured rate. The ALJ found that the hospital "appeared to have abandoned ... [the mixing service theory and] to assert, instead that it was entitled to a refund under the 'Hotel Guest Room' section."

P was prohibited from charging the hospital the flat rate under the "Hotel Guest Room" tariff provision (hereinafter "Hotel Guest Room" theory).[4] After the ALJ found that the hospital had not proven that it was entitled to a refund, the hospital sought and received a voluntary dismissal of its PSC complaint from the PSC.[5]

The hospital then filed the underlying action in the circuit court seeking a refund of $1,725.00 per month from November 5, 1986 through November 5, 1991, or a total of $103,500.00. Alleging that the PSC should consider this matter, C & P moved to dismiss the hospital's circuit court complaint (hereinafter complaint). The circuit court found: (1) collateral estoppel did not apply because the PSC had vacated the ALJ's decision; and (2) although "a consideration of the meaning and interpretation of the defendant's tariff rates and rules and regulation of the Public Service Commission," may be required in this refund case, such "consideration is not beyond the jurisdiction of this court." After the circuit court refused to dismiss the hospital's complaint, C & P sought a writ of prohibition from this Court.

## II

W.Va.Code 24–4–7 [1923] states, in pertinent part:

> Any person, firm or corporation claiming to be damaged by any violation of this chapter by any public utility subject to the provisions of this chapter, may make complaint to the commission, as provided herein, and bring suit in his own behalf for the recovery of the damages for which such

public utility may be liable under this chapter in any circuit court having jurisdiction....

In *Carter v. Willis*, 145 W.Va. 779, 783, 117 S.E.2d 594, 596 (1960), we recognized that a user of a public utility is not restricted to the PSC for relief, but can, under *W.Va.Code* 24–4–7 [1923], "bring suit in his own behalf for the recovery of the damages ... in any circuit court having jurisdiction." In Syl.Pt. 1, *Carter id.*, we stated:

> Where a person has been injured by the refusal of a public utility to comply with a valid order of the Public Service Commission, the injured person may recover compensation therefor in any court of competent jurisdiction.

In *Carter*, because the plaintiff exhausted his administrative remedies before suing the public utility, the circuit court addressed only the issue of damages.

In *Wheeling Steel Corp. v. Public Service Commission*, 90 W.Va. 74, 79, 110 S.E. 489, 491 (1922), we stated that "the jurisdiction and authority of the Public Service Commission extends no further than to prescribe proper rates and proper practices, and to direct the public service corporations to comply with them in the future." In *Wheeling* we recognized the concurrent jurisdiction authorized in the statute:

> Section 18 of the Public Service Commission Act clearly authorizes a suit to be brought in any circuit court having jurisdiction to recover for an injury done by a public service corporation by indulging in any practice not allowed by law.

4. The "Hotel Guest Room" theory derives from C & P's tariff section, that provides in pertinent part that "Plan 3 [flat-rate] trunks are not provided at hotels, or other locations of like nature, where the service is desired for use of those other than the management." C & P's Local Exchange Services Tariff, P.S.C.–W.Va.–No. 202 § 1(B)(9)(b). According to the ALJ's opinion (transcription of the ALJ hearing was not provided), the parties agree that a hotel or hospital with a PBX system is required to segregate its telephone lines into "administrative" (used by management or administrative personnel) and "nonadministrative" (used by patients or guests). According to the ALJ, measured service is required only for "nonadministrative" lines. The ALJ found that the hospital had four "nonadministra-

tive" lines (two for local calling and two for long distance calling) and that after 5 November 1991, the hospital subscribed to measured service for all its telephone lines. Robert L. Swoope, C & P's Director of Regulatory Matters testified that despite C & P's requests, the hospital waited until the hearing day to inform C & P of the number of "nonadministrative lines." The ALJ found that "the Hospital was correctly charged for the type of service it had ordered and received."

5. On another matter, the ALJ held that "C & P should credit Beckley Hospital's account for the previously calculated $1,407.60 for the November/December 1991 period, if it has not done so previously."

*Wheeling id.* In *Wheeling,* we agreed with the PSC that it lacked jurisdiction to decide a case where the sole question remaining concerned whether the applicable rate was "prescribed by the contract in effect" or "prescribed by the Commission." We concluded:

> The Public Service Commission of West Virginia has no authority to entertain a complaint for the purpose of determining that a public service corporation has charged rates in excess of those authorized, when it appears that the rate which it is contended was applicable, and which such corporation is charged with exceeding, is no longer applicable to the service rendered, and the decision sought could only be for the purpose of fixing a basis for recovery of the amount of the excessive charge.

Syl., *Wheeling id. See* Syl.Pt. 1, *Charleston Apartments Corp. v. Appalachian Electric Power Co.,* 118 W.Va. 694, 192 S.E. 294 (1937) (a suit to recover charges in excess of the legal rate "presented a judicial question determinable by the courts, and [was] in no wise contingent upon a preliminary inquiry by the public service commission"); Syl.Pt. 1, *Natural Gas Co. of W.Va. v. Sommerville,* 113 W.Va. 100, 166 S.E. 852 (1932); *City of Philippi v. Tygarts Valley Water Co.,* 99 W.Va. 473, 482, 129 S.E. 465, 468 (1925) (commission "does not afford the relator the remedy to enforce the right or compel the performance").

■ Although the general rule is that one must exhaust administrative remedies before going into court to enforce a right, *W.Va.Code* 24-4-7 [1923] confers concurrent jurisdiction on the PSC and the circuit court in a limited number of cases—namely, those cases seeking a refund based on rules and practices of the PSC that are clear and unambiguous. In these limited cases, a plaintiff can proceed either before the PSC or the circuit court. However, these avenues are mutually exclusive: once a PSC complaint is filed, an appeal to the circuit court is foreclosed until the administrative remedies are exhausted.

In this case, the hospital argues that its suit is either a simple refund case that is under the jurisdiction of the circuit court or a refund case relying on clear and unambiguous PSC rules and practices that also can be decided by the circuit court. C & P maintains this suit involves interpretations of its tariff for which the special competence of the PSC is required.

■ Although *W.Va.Code* 24-4-7 [1923] grants concurrent jurisdiction in a limited number of cases seeking a refund based on clear and unambiguous rules and practices of the PSC, this case raises policy issues that should be considered by the PSC in the interest of a uniform and expert administration of the public utilities' regulatory scheme. The hospital's theories justifying a refund involve complex issues; the hospital's mixing services theory apparently has yet to be considered by the PSC. Indeed, a surcharge tariff was proposed for those facilities where mixed services might be allowed. *See supra* note 3 for a discussion of the hospital mixing services theory. Moreover, the hospital's "Hotel Guest Room" theory apparently depends on a segregation of the hospital lines with measured service required for only "nonadministrative" lines. *See supra* note 4, for a discussion of the hospital's "Hotel Guest Room" theory. Because the issues in this case present unusual and technical questions of tariff interpretation or application, the PSC should make an initial determination concerning the proper interpretation of C & P tariff.

### III

■ Our rule for determining when to grant a writ of prohibition was stated in Syl.Pt. 1, *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979):

> In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate

which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

*In accord* Syl.Pt. 6, *State ex rel McClanahan v. Hamilton,* 189 W.Va. 290, 296, 430 S.E.2d 569, 575 (1993) (*Hinkle's* rule was based upon principles of judicial economy); *see Whitlow v. Bd. of Ed. of Kanawha County,* 190 W.Va. 223, 227, 438 S.E.2d 15, 19 (1993); *State Farm Mutual Auto Ins. Co. v. Stephens,* 188 W.Va. 622, 626, 425 S.E.2d 577, 581 (1992).

In this case, the hospital chose to file a complaint with the PSC; when, however, the ALJ's decision was adverse to the hospital, it vacated its PSC complaint and filed a complaint in circuit court. Because of the complexity of the issues, the circuit court should have deferred any decision in the matter until the PSC was able to make an initial determination concerning C & P's tariff.

Under *Hinkle, supra,* this Court examines the adequacy of other available remedies and the over-all economy of effort and money among litigants, lawyers and courts. Because this case must be considered by the PSC, we grant a writ of prohibition. However, in order to allow the hospital to proceed in this case, we find that the hospital may, at its option, have the ALJ's order reinstated and proceed with an appeal to the PSC.

Accordingly, for the reasons set forth above, a writ of prohibition is awarded.

Writ awarded.