550 S.E.2d 381

**Gary A. HEDRICK Plaintiff Below, Appellant,**

v.

**GRANT COUNTY PUBLIC SERVICE DISTRICT Defendant Below, Appellee.**

No. 28472.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 6, 2001.

Decided June 15, 2001.

Dissenting Opinion of Justice Maynard July 5, 2001.

---

Gary A. Hedrick, Romney, Pro Se.

James Paul Geary, II, Esq., Geary & Geary, Petersburg, West Virginia, Attorney for Appellee.

PER CURIAM:

Appellant Gary A. Hedrick appeals the dismissal with prejudice of his circuit court action against appellee Grant County Public Service District. Mr. Hedrick had sought the extension of water service to his proposed mobile home park and disagreed with

the appellee over the cost of the extension. He filed a complaint before the Public Service Commission to compel the extension of water service and filed a complaint in the Circuit Court of Grant County for damages and other relief. Because we find the circuit court erred in its application of the primary jurisdiction doctrine, we reverse.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant Gary A. Hedrick acquired a parcel of land on Old River Road in the Milroy District of Grant County. Mr. Hedrick wished to found a mobile home park on his land that would be christened the Royal Glen Mobile Home Park. However, future denizens of the Royal Glen would have to rely upon well water unless the area could be connected to the local public water supply.

Appellee Grant County Public Service District (GCPSD) is a public corporation charged with the duty of developing, operating, and maintaining a public water system in Grant County, West Virginia. Mr. Hedrick approached the GCPSD and requested an extension of public water service to his proposed park.

Mr. Hedrick and the GCPSD did not share a similar view of the feasibility of or costs associated with the extension of water service to Royal Glen. The record does not reveal all the details of the interactions between Mr. Hedrick and the GCPSD, but it appears that Mr. Hedrick felt that the GCPSD had a duty under the law to extend service to his park at no cost to him, provided that he could show that the cost of the extension would be offset by revenue from the new water customers who would be moving into the mobile home park.

On September 20, 1999, Mr. Hedrick filed a formal complaint with the West Virginia Public Service Commission (the "Commission"),[1] seeking administrative relief and damages. Mr. Hedrick decided to pursue a two-track approach to his problem, and also filed suit in the Circuit Court of Grant County on October 14, 1999. Thus this dispute proceeded simultaneously before the Commission and the circuit court.

The GCPSD eventually produced an estimate for the cost of extending service to the park of approximately $28,000. Mr. Hedrick claimed that the cost estimate was grossly exaggerated, that the GCPSD could itself do the work, but refused to, and that the GCPSD had generally engaged in a course of action that caused him undue delay in the construction of his mobile home park.

The GCPSD took the position that its estimate was reasonable, because it must comply with a "prevailing wage" statute that increases its labor costs, and that a line larger than the one proposed by Mr. Hedrick would be necessary to accommodate expected future demand for water. The GCPSD also pointed out that Mr. Hedrick had not actually built the mobile home park (at least at the time this dispute began) and that there was no guarantee that sufficient customers would be added to the system to offset the cost of the extension.

In the circuit court proceeding, the GCPSD moved to dismiss for lack of jurisdiction, on the basis that Mr. Hedrick had not exhausted his administrative remedies. The court held a hearing on this motion on April 6, 2000, and by order dated May 4, 2000, the court dismissed the case. Mr. Hedrick moved the court to reconsider, and on June 27, 2000, the court denied Mr. Hedrick's motions. It is from this order that he appeals.

Meanwhile, the administrative machinery ground on, and an administrative law judge entered a recommended decision on April 17, 2000, to dismiss Mr. Hedrick's complaint before the Commission. In short, the ALJ ruled that the estimate provided by the GCPSD was reasonable, the GCPSD's actions toward Mr. Hedrick were reasonable, and Mr. Hedrick would need to follow the proper procedures before renewing any complaint, namely, he would have to provide a

1. Though we often abbreviate Public Service Commission as "PSC" we substitute the word "Commission" in this opinion, so as to avoid confusion with the Grant County Public Service District, abbreviated "GCPSD."

deposit sufficient to protect the GCPSD if the eventual number of customers did not cover the cost of the extension, or he would have to enter into an alternative arrangement with the GCPSD whereby he would agree to construct the extension himself.

Mr. Hedrick filed exceptions to the recommended decision on May 3, 2000, and subsequently on July 19, 2000, the Commission denied Mr. Hedrick's exceptions, adopted the recommended decision, and dismissed Mr. Hedrick's complaint. Mr. Hedrick appealed that adverse ruling of the Commission to this Court and presented oral argument on the Motion Docket of October 31, 2000. This Court denied his petition in that appeal, 5–0, the next day.

The basic position of the GCPSD is that the lower court was right to dismiss the case because of Mr. Hedrick's other pending complaint. Mr. Hedrick argues that, even if part of his suit should be barred because of his pending Commission complaint, his claim for compensatory and punitive damages should still be heard, as the Commission has no authority to act on such a claim.

## II.

### STANDARD OF REVIEW

██ We note that we are reviewing the lower court's grant of a motion to dismiss. We have held that: "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995). However, in this case the lower court dismissed the complaint on the basis of the so-called primary jurisdiction doctrine, discussed *infra,* which requires a somewhat different analysis: "The court's decision whether to apply the primary jurisdiction doctrine is reviewed on appeal under an abuse of discretion standard." Syl. pt. 1, *in part, State ex rel. Bell Atlantic–West Virginia, Inc. v. Ranson,* 201 W.Va. 402, 497 S.E.2d 755 (1997).

## III.

### DISCUSSION

██ The Public Service Commission is charged with the regulation of entities such as the Grant County Public Service District:

> The jurisdiction of the commission shall extend to all public utilities in this state, and shall include any utility engaged in any of the following public services: ...
>
> [*inter alia*] supplying water, gas or electricity, by municipalities or others; sewer systems servicing twenty-five or more persons or firms other than the owner of the sewer systems; any public service district created under the provisions of article thirteen-a, chapter sixteen of this code; ....

W. Va.Code § 24–2–1 (1991). The Public Service Commission obviously has the power to regulate those under its jurisdiction:

> (a) The commission is hereby given power to investigate all rates, methods and practices of public utilities subject to the provisions of this chapter; to require them to conform to the laws of this state and to all rules, regulations and orders of the commission not contrary to law; and to require copies of all reports, rates, classifications, schedules and timetables in effect and used by the public utility or other person, to be filed with the commission, and all other information desired by the commission relating to the investigation and requirements, including inventories of all property in such form and detail as the commission may prescribe. The commission may compel obedience to its lawful orders by mandamus or injunction or other proper proceedings in the name of the state in any circuit court having jurisdiction of the parties or of the subject matter, or the supreme court of appeals direct, and the proceedings shall have priority over all pending cases....

W. Va.Code § 24–2–2 (1998). The Commission also has the power to seek the imposition of penalties upon violators:

> Every officer, agent, employee, or stockholder of any public utility subject to the provisions of this chapter, and every patron, passenger, shipper or consignee, or other person, who shall violate any provision of this chapter, or who procures, aids or abets any violation of any such provision by any such public utility shall be guilty of

a misdemeanor, and, upon conviction thereof, shall be fined not more than one thousand dollars or be confined in jail not more than one year, or both, in the discretion of the court. . . .

W. Va.Code § 24–4–1 (1923). Finally, the Commission may seek or impose other or additional penalties for various violations.[2]

When one is aggrieved by the actions of a regulated utility, one may file a petition before the Commission, as Mr. Hedrick did:

Any person, firm, association of persons, corporation, municipality or county, complaining of anything done or omitted to be done by any public utility subject to this chapter, in contravention of the provisions thereof, or any duty owing by it under the provisions of this chapter, may present to the commission a petition which shall succinctly state all the facts. Whereupon, if there shall appear to be any reasonable ground to investigate such complaint, a statement of the charges thus made shall be forwarded by the commission to such public utility, which shall be called upon to satisfy such complaint or to answer to the same in writing within a reasonable time to be specified by the commission. If such public utility within the time specified shall make reparation for the injury alleged to have been done, or correct the practice complained of and obey the law and discharge its duties in the premises, then it shall be relieved of liability to the complainant for the particular violation of the law or duty complained of. If such public utility shall not satisfy the complainant within the time specified, it shall be the duty of the commission to investigate the same in such manner and by such means as it shall deem proper.

W. Va.Code § 24–4–6 (1923). The above language informs us that the Commission has jurisdiction over the actions of the Grant County Public Service District, the power to regulate its rates and practices, and if necessary, the prerogative to seek fines or jail time for its directors or officers.

It appears that Mr. Hedrick understands that the Commission had jurisdiction over the majority of his dispute with the GCPSD. But Mr. Hedrick argues that the circuit court was wrong to dismiss his claim with prejudice, because our law allows an aggrieved party to initiate an action before the Public Service Commission *and* before a circuit court. Specifically, he calls our attention to the following:

**Damages recoverable for violations**

Any person, firm or corporation claiming to be damaged by any violation of this chapter by any public utility subject to the provisions of this chapter, may make complaint to the commission, as provided herein, *and bring suit in his own behalf for the recovery of the damages for which such public utility may be liable under this chapter in any circuit court having jurisdiction.* In any such action, the court may compel the attendance of any agent, officer, director or employee of such corporation as a witness and require also the production of all books, papers and documents which may be used as evidence, and in the trial thereof such witnesses may be compelled to testify, but any such witness shall not be prosecuted for any offense concerning which he is compelled hereunder to testify.

W. Va.Code § 24–4–7 (1923)(emphasis added).

▪ The use of the connecting word "and" in W. Va.Code § 22–4–7 suggests that the Legislature intended to allow aggrieved parties the right to pursue specified forms of relief in either or both forums. The statute makes clear that a person who has been damaged by a violation of the public service commission statutes may—not shall, but may—"make complaint to the commission . . . *and* bring suit in his own behalf for the recovery of the damages . . . in any circuit court[.]" We perceive in this statute no requirement that an aggrieved party must ex-

---

**2.** *See,* W. Va.Code § 24–4–2 (1935) (Penalty for falsifying, destroying or altering entries and for making false statements); W. Va.Code § 24–4–3 (1923) (Additional penalties for violating certain orders of commission); W. Va.Code § 24–4–4 (1923) (Penalty for violating orders of commission for which no other penalty is provided); W. Va.Code § 24–4–5 (1923) (Violation of commission's orders as contempt punishable by commission).

haust all administrative remedies before the Commission before pursuing a claim for damages in a circuit court.[3]

The lower court incorrectly took the position that, although one may pursue relief before either body, the two routes are mutually exclusive, and that, until Mr. Hedrick has exhausted his administrative remedies, the court has no subject matter jurisdiction. Therefore, the court dismissed Mr. Hedrick's complaint, relying upon another telephone company case, *State ex rel. C & P Telephone Co. v. Ashworth,* 190 W.Va. 547, 438 S.E.2d 890 (1993). In *Ashworth,* we held that:

> Although the general rule is that one must exhaust administrative remedies before going into court to enforce a right, W. Va.Code 24-4-7 [1923] confers concurrent jurisdiction on the PSC and the circuit court in a limited number of cases—namely, those cases seeking a refund based on rules and practices of the PSC that are clear and unambiguous. In these limited cases, a plaintiff can proceed either before the PSC or the circuit court. However, these avenues are mutually exclusive: once a PSC complaint is filed, an appeal to the circuit court is foreclosed until the administrative remedies are exhausted.

*Id.* syl. pt. 1, 438 S.E.2d 890.

In a more recent case concerning a similar dispute, we discussed the holding of *Ashworth,* and noted that the case turned upon the issue of the Commission's specialized knowledge:

> This Court applied the primary jurisdiction doctrine in *Ashworth,* concluding that the case, which presented "unusual and technical questions of tariff interpretation or application," "raise[d] policy issues that should be considered by the PSC in the interest of a uniform and expert administration of the public utilities' regulatory scheme."

*State ex rel. Bell Atlantic–West Virginia, Inc. v. Ranson,* 201 W.Va. 402, 412, 497 S.E.2d 755, 765 (1997)(quoting *State ex rel. C & P Telephone Co. v. Ashworth,* 190 W.Va. 547, 551, 438 S.E.2d 890, 894 (1993)).

We then went on to explain the primary jurisdiction doctrine in greater detail in *Ranson:*

> Where an administrative agency and the courts have concurrent jurisdiction of an issue which requires the agency's special expertise and which extends beyond the conventional experience of judges, the doctrine of primary jurisdiction applies. In such a case, the court should refrain from exercising jurisdiction until after the agency has resolved the issue. The court's decision whether to apply the primary jurisdiction doctrine is reviewed on appeal under an abuse of discretion standard.

Syl. pt. 1, *State ex rel. Bell Atlantic–West Virginia, Inc. v. Ranson,* 201 W.Va. 402, 497 S.E.2d 755 (1997). Our concern in *Ranson* was to allow circuit courts to retain jurisdiction over a case, unless resolving the dispute would require the "special expertise" of an administrative agency. We went on explain how a court should decide whether or not to retain jurisdiction:

> In determining whether to apply the primary jurisdiction doctrine, courts should consider factors such as whether the question at issue is within the conventional experience of judges; whether the question at issue lies peculiarly within the agency's discretion or requires the exercise of agency expertise; whether there exists a danger of inconsistent rulings; and whether a prior application to the agency has been made.

*Id.* Syl. pt. 2, 497 S.E.2d 755. In his *pro se* complaint before the circuit court, Mr. Hedrick claimed that the GCPSD caused an undue delay in the delivery of water service to his mobile home park. In that circuit court complaint he prayed for, *inter alia,* compensatory damages for lost revenue, and punitive damages for, in Mr. Hedrick's words, the GCPSD's "wilful, or reckless, or negligent non compliance with PSC rules and its breech of duty."

Mr. Hedrick seems to have grasped the basic notion that he could obtain some relief

---

**3.** We recognize, however, that the circuit court may, in its discretion, delay its proceedings to await a ruling from the Commission, and that in many cases, an unfavorable ruling from the Commission will result in an unfavorable ruling from the circuit court.

from the Commission, but that certain relief, namely damages, should be pursued before the circuit court.

We find that such a suit for damages is within the conventional experience of judges, and does not lie peculiarly within the agency's discretion or require the exercise of agency expertise.[4] Thus we conclude that the circuit court erred in dismissing the case with prejudice under the primary jurisdiction doctrine. We remand the case so that the lower court can consider Mr. Hedrick's claims for damages and for the costs of the litigation.

## IV.

## CONCLUSION

For the reasons set forth above, the decision of the lower court is reversed and this case is remanded for proceedings consistent with this opinion.

Reversed and remanded.

MAYNARD, Justice, dissenting.

(Filed July 5, 2001)

I dissent because I find two problems with the majority's disposition of this case. First, the majority's decision ignores our law as stated in Syllabus Point 1 of *State ex rel. C & P Telephone Co. v. Ashworth*, 190 W.Va. 547, 438 S.E.2d 890 (1993). Second, and more fundamentally, the issues in this case are now *res judicata* so that there is no reason to remand the case to the circuit court.

As quoted by the majority opinion, Syllabus Point 1 of *State ex rel. C & P Telephone Co. v. Ashworth* provides:

Although the general rule is that one must exhaust administrative remedies before going into court to enforce a right, *W.Va.Code* 24-4-7 [1923] confers concurrent jurisdiction on the Public Service Commission and the circuit court in a limited number of cases—namely those cases seeking a refund based on rules and practices of the Public Service Commission that are clear and unambiguous. In these lim-

ited cases, a plaintiff can proceed either before the Public Service Commission or the circuit court. However, these avenues are mutually exclusive: once a Public Service Commission complaint is filed, an appeal to the circuit court is foreclosed until the administrative remedies are exhausted.

Accepting the fact that this case falls under the exception to the general rule that one must exhaust administrative remedies prior to going into court, a plaintiff still must proceed *either* before the PSC or the circuit court, but not both at the same time. Mr. Hedrick first filed his complaint with the PSC. At that point, he was foreclosed from filing suit in the circuit court. Accordingly, the circuit court properly dismissed his case.

A more fundamental flaw with the majority opinion is the fact that the majority remands the case to the circuit court *despite the fact that there are no issues remaining for the circuit court to consider.* After Mr. Hedrick filed his complaint with the PSC, the ALJ entered a recommended decision which determined, *inter alia*, that the estimate provided by the GCPSD was reasonable and the GCPSD's actions toward Mr. Hedrick were reasonable. Mr. Hedrick filed exceptions to the recommended decision, and the PSC denied the exceptions, adopted the recommended decision, and dismissed the complaint. Mr. Hedrick then appealed the PSC's ruling to this Court, and this Court denied the petition. As a result, the issues ruled upon by the PSC are now *res judicata.*

We have said,

Before the prosecution of a lawsuit may be barred on the basis of *res judicata*, three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could

---

4. We also note that the passage of time may have rendered moot some of the issues in this case, in that the Commission has since issued a final

ruling on Mr. Hedrick's complaint before that body, and his subsequent appeal of that decision was refused by this Court.

**598**

have been resolved, had it been presented, in the prior action.

Syllabus Point 4, *Blake v. Charleston Area Medical Center, Inc.*, 201 W.Va. 469, 498 S.E.2d 41 (1997). "It is now well-established that 'the doctrine of res judicata may be applied to quasi-judicial determinations of administrative agencies.'" *Wheeling–Pittsburgh Steel Corp. v. Rowing,* 205 W.Va. 286, 296, 517 S.E.2d 763, 773 (1999) (quoting *Rowan v. McKnight,* 184 W.Va. 763, 764, 403 S.E.2d 780, 781 (1991) (per curiam)) (citation omitted).

> For issue or claim preclusion to attach to quasi-judicial determinations of administrative agencies, at least where there is no statutory authority directing otherwise, the prior decision must be rendered pursuant to the agency's adjudicatory authority and the procedures employed by the agency must be substantially similar to those used in a court. In addition, the identicality of the issues litigated is a key component to the application of administrative *res judicata* or collateral estoppel.

Syllabus Point 2, *Vest v. Bd. of Educ. of Cty. of Nicholas,* 193 W.Va. 222, 455 S.E.2d 781 (1995).

Applying this rule to the present facts, it is clear that the prior decision was rendered pursuant to the PSC's adjudicatory authority, and that the procedures applied by the PSC are substantially similar to those used in a court. The presiding officers at formal PSC hearings have a duty to conduct full, fair, and impartial hearings and also possess the power to administer oaths, issue subpoenas, provide for other methods of discovery, receive evidence, and rule upon objections and motions. 150 C.S.R. § 1–12.2(b) (1987). Parties at these hearings are entitled to enter an appearance, introduce evidence, examine and cross-examine witnesses, and make arguments. 150 C.S.R. 1–12.4(a) (1987). Finally, the issues before the PSC are identical to those which will be considered by the circuit court on remand. Therefore, I believe that *res judicata* applies to the PSC

decision in this case.[1] Further, there is no reason to remand to the circuit court for consideration of damages since the PSC found that the GCPSD did nothing wrong.

For the above-stated reasons, I dissent from the majority opinion. I am authorized to state that Justice Davis joins me in this dissent.

---

1. In Syllabus Point 4 of *Central West Virginia Refuse v. PSC,* 190 W.Va. 416, 438 S.E.2d 596 (1993), this Court said that when the PSC is exercising its rate-making authority, its decisions are not subject to *res judicata* because rate making is a legislative function. The instant case, in contrast, concerns the PSC's adjudicatory function.